**James Roy SMITH, Jr.**

v.

**Mary Elizabeth SMITH and Air Draulics Engineering Company, Inc., Garnishee.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Oct. 16, 2003 Session.

Feb. 5, 2004.

Permission to Appeal Denied by Supreme Court Sept. 7, 2004.

Howard B. Hayden, Memphis, Tennessee, for the appellant, Air Draulics Engineering Company, Inc.

Valerie Corder, Memphis, Tennessee, for the appellee, James Roy Smith, Jr.

Terese B. Deboo, Guardian Ad Litem, Memphis, Tennessee, appellee, pro se.

## OPINION

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

This is a garnishment case. In the underlying child custody proceedings, the father obtained primary custody of the parties' minor child, and the mother was ordered to pay child support. The father and the child's guardian ad litem subsequently obtained judgments against the mother for child support, attorney's fees, and guardian ad litem fees. To collect on the judgments, the father and the guardian ad litem filed four garnishments against the mother's wages. After the fourth garnishment was filed, the garnishee failed to answer. A hearing was set to determine whether a conditional judgment should be against the garnishee for the entire debt. On the eve of the hearing, the garnishee filed an answer to the garnishment, admitting liability. Nevertheless, the trial court entered a conditional judgment against the garnishee for the entire amount of the mother's debt. After a subsequent *scire facias* hearing, the trial court made the conditional judgment a final judgment for the entire amount of the debt. The garnishee now appeals. We reverse, concluding that, because the garnishee filed an answer, albeit untimely, the trial court was without authority to enter a conditional judgment against the garnishee.

On February 24, 1999, Garnishor/Appellee James Roy Smith, Jr. ("Father"), and Mary Elizabeth Smith ("Mother") were divorced by final decree. The trial court awarded the parties joint custody of their minor son, with Mother designated as the primary custodial parent. During the divorce proceedings, Garnishor/Appellee Therese B. Deboo ("Guardian") was appointed as guardian ad litem to represent the child.

Subsequently, a petition for contempt was filed against Mother for her willful

**288**

failure to adhere to the custody arrangement as ordered by the trial court. On July 28, 1999, Mother was held to be in contempt of court. On December 10, 1999, upon the joint petition of Father and the Guardian, the trial court ordered a change of custody, awarding full custody of the parties' son to Father. In that order, the trial court also found that Mother was in civil contempt of unspecified court orders. The trial court ordered Mother to pay child support and attorney's fees to Father, and also ordered her to pay all of the Guardian's fees.[1] On March 2, 2000, Mother was again held in civil contempt for, among other things, failure to pay child support, failure to obey injunctive orders, and failure to comply with orders relating to Mother's contact with the parties' son.

The proceedings in the trial court resulted in several money judgments against Mother in favor of Father and the Guardian. During this time, Mother was employed by Garnishee/Appellant Air Draulics Engineering Company, Inc. ("Air Draulics").[2] In order to collect on the judgments, Father and the Guardian began what turned out to be repeated, frustrating attempts to garnish Mother's wages from Air Draulics. On August 31, 1999, Father's first garnishment issued. On September 20, 1999, Air Draulics answered the garnishment and paid $231.85 into the court clerk's office. On November 3, 1999, Mother filed a motion and affidavit for a stay of the garnishment, and on November 12, 1999, the garnishment was stayed.

A second garnishment was issued in April 2000. Mother then filed a Chapter 7 petition in bankruptcy. On June 5, 2000, the bankruptcy court issued an automatic stay in the bankruptcy case, resulting in a stay of the second garnishment. Father and the Guardian initiated adversary proceedings in the bankruptcy court, seeking to collect on the judgments against Mother. In February 2001, the bankruptcy court entered two orders, granting summary judgment to both Father and the Guardian, respectively. The bankruptcy court held that, because Mother's debts to Father and to the Guardian were for child support, they were nondischargeable debts.[3] See 11 U.S.C. § 523(a)(5).

On March 7, 2001, Father and the Guardian filed their affidavits of garnishment, and a third garnishment was issued against Mother's wages at Air Draulics. Mother thereafter filed a Chapter 13 petition in bankruptcy, and sought to stay the garnishment proceedings. However, her bankruptcy petition was dismissed on August 3, 2001, for failure to abide by the bankruptcy court's orders.

On August 28, 2001, Father and the Guardian made another attempt to garnish Mother's wages. This was the fourth garnishment. On October 10, 2001, this fourth garnishment was served on Air Draulics. Air Draulics did not answer the garnishment at that time, and paid no money into court.

Eight months later, on June 29, 2002, Father and the Guardian filed a joint motion for a conditional judgment, a joint

---

1. Mother filed a timely notice of appeal from that order, but the appeal was later dismissed for failure to file a transcript, statement of the evidence, or notice of no transcript or statement.

2. Air Draulics is now a wholly-owned subsidiary of Applied Industrial Technologies, Inc.

3. The bankruptcy court also exercised its right of permissive abstention, declaring that any further disputes between the parties should be resolved by the trial court. See 28 U.S.C. § 1334(c)(1).

petition for a *scire facias* hearing, and a petition for final judgment against Air Draulics, based on its failure to honor the garnishment. The motion asserted that Air Draulics had not answered the garnishment or paid any money into court, and that Father and the Guardian were therefore entitled to a conditional judgment and a *scire facias* hearing pursuant to Tennessee Code Annotated § 26–2–209. That statute provides:

> **26–2–209. Failure to appear or answer.**—The date garnishee's answer is received by the court clerk shall be noted on the docket book in the proper manner, whether or not the answer discloses any property subject to garnishment. If the garnishee fails to appear or answer, a conditional judgment may be entered against the garnishee for the plaintiff's debt, upon which a notice shall issue to the garnishee returnable at such time as the court may require, to show cause why judgment final should not be rendered against the garnishee. On failure of the garnishee to appear and show cause, the conditional judgment shall be made final, and execution awarded for the plaintiff's entire debt and costs.

Tenn.Code Ann. § 26–2–209 (2000). The hearing on the joint motion for a conditional judgment was noticed for July 19, 2002.

On July 18, 2002, the day before the conditional judgment hearing, Air Draulics filed the affidavit of Julie Krute ("Krute"), the corporate representative who was responsible for Air Draulics' payroll. The document was titled "Affidavit of Julie Krute/Answer to Garnishment of Air Draulics Engineering Co., Inc." In the affidavit, Krute acknowledged that Air Draulics was served with the garnishment in October 2001, and that Air Draulics failed to answer the garnishment. Krute said that the failure to answer the garnishment

was due to her "oversight." The affidavit also stated that Mother's bi-weekly earnings were $1,333.60, and that $290.77 was being taken out of each paycheck pursuant to a court-ordered income assignment and paid to the Tennessee Child Support Receipting Unit.

On the following day, July 19, 2002, the trial court held a hearing and granted the motion for a conditional judgment against Air Draulics for the entire amount of Mother's debt to Father and the Guardian, which totaled $82,817.40. The trial court set the *scire facias* hearing for August 21, 2002, "requiring [Air Draulics] to appear and show cause, if any it has, why the conditional judgment should not be made final." At the hearing, the trial court indicated that Air Draulics' answer would not prevent the grant of a conditional judgment because it was untimely filed. In its order, the trial court simply stated that the garnishee's motion was "well-taken and should be granted."

On August 20, 2002, the day before the *scire facias* hearing, Air Draulics filed a supplemental affidavit of Julie Krute with attached exhibits. Krute again stated that she "failed to answer the subject garnishment through simple negligence or inadvertence on [her] part." The supplemental affidavit noted that Mother's bi-weekly earnings had increased in February 2002 from $1,333.60 to $1,387.20, because Mother had received a raise. The exhibits provided more detailed information about Mother's net income, and concluded that, had Air Draulics properly responded to the garnishment, $2,797.66 would have been withheld from Mother's net earnings and remitted to the court clerk. Later, counsel for Air Draulics stated in open court that the amount in the supplemental affidavit was wrong, and that $3,308.76 would have been the proper amount due under the garnishment.

On August 21, 2002, the trial court conducted the *scire facias* hearing on the conditional judgment. Several witnesses testified, including Julie Krute and Bruce and Sheila Siegal. The Siegals had been co-owners of Air Draulics; Mr. Siegal was the president and Mrs. Siegal was the secretary/treasurer. At the time of the hearing, Mr. Siegal was the vice-president and general manager of Air Draulics, employed by the parent company.[4]

Krute testified that she worked out of an office in Cleveland, Ohio, and was responsible for the payroll system at Air Draulics in Tennessee. She said that $290.77 was being deducted from Mother's salary on a bi-weekly basis pursuant to an income assignment for child support, and that the money was being paid into the central child support collections unit in Tennessee. Krute acknowledged that she had received the garnishment on Mother's wages in October 2001. However, Krute testified that she thought it had been answered, so she simply filed it in Mother's file. She said that she did not discover that it had not been answered until this lawsuit was filed, sometime in July 2002. She claimed that she was never instructed by either Mr. or Mrs. Siegal to disregard the garnishment notice.

Mother also testified, and portions of Mother's deposition were read into evidence. Mother stated that she had worked for Air Draulics since February 1995. Mother was questioned at length about her relationship with the Siegals outside of their working relationship. Mother said that she had a friendship with the Siegals, but that they did not socialize together. Mother explained that she at

times stayed with the Siegals' daughter, who has Down Syndrome, while the Siegals went out of town. Mother explained that she knew the Siegals' daughter because she was in Mother's Sunday school class. Mother was asked about the car she was driving, and she acknowledged that it belonged to Mr. Siegal. In her deposition, Mother said that Mr. Siegal purchased the car for $9,700 for her as a gift because she did not have transportation to work. However, documents filed in Mother's bankruptcy proceedings were entered into evidence, indicating that Mother represented to the bankruptcy court that she purchased the car and that the money paid by Mr. Siegal was a loan to her. At the *scire facias* hearing, Mother said that her deposition testimony was in error, and maintained that the car was not a gift to her, but rather that it was paid for through a loan from Mr. Siegal. Mother testified that Mr. Siegal had loaned her money on other occasions in the past, and that the previous loans were repaid by deductions from her payroll check.

Mother was also asked about the October 2001 garnishment. Mother testified that she remembered receiving a copy of the garnishment, but does not remember how she got it. She said that she made sure that the Siegals received a copy of it so that it could be forwarded to the proper office. She noticed that no money was being taken from her paycheck, but did not inquire about it or voluntarily pay the garnishment.

Mrs. Siegal testified at the hearing. She said that Mother had watched her house and babysat for her children, but that she never paid Mother for those ser-

4. Apparently at the outset of the hearing, an issue arose as to whether counsel for Air Draulics had violated "the Rule" by informing the Siegals outside the courtroom that counsel for Father had indicated in his open- ing statement that he planned to assert that Mother's friendship with the Siegals motivated the Siegals to attempt to defeat or circumvent the garnishment. The trial judge questioned the witnesses at length about this.

vices. She claimed that she did not discuss the details of the garnishment proceedings with Mother, but acknowledged that she was aware of them. The only personal loan to Mother that Mrs. Siegal could remember was the loan for the car. Any other loans made to Mother were discussed between Mother and Mr. Siegal. Mrs. Siegal stated that she was familiar with the proper management of a garnishment, and that she had never obtained legal advice to determine whether she was handling the garnishments correctly. Mrs. Siegal thought that she had properly handled the October 2001 garnishment. She acknowledged having received an October 1999 letter from Father's counsel to Air Draulics, advising Air Draulics that the first garnishment was not being paid in full. The letter asked Air Draulics to correct its misconduct and urged it to consult with counsel regarding the proper treatment of the garnishment. Mrs. Siegal, however, took no action in response to the letter. Mrs. Siegal testified that she sent the October 1991 garnishment to Krute in Ohio for Krute to handle in her office. Mrs. Siegal indicated that Mother never asked her to try to keep her wages from being garnished.

Mr. Siegal also testified at the hearing. Mr. Siegal admitted that he had made several loans to Mother and that he never charged her interest on those loans. He said that he had purchased the car Mother was using and loaned it to her, and claimed that he told Mother to pay him back "when she could." Mr. Siegal asserted that he had made loans to other employees, because "it was the right thing to do." Mr. Siegal conceded that he had read the letter from Father's counsel to Air Draulics indicating that the October 1999 garnishment was being mishandled. He said that it caused him some concern, but he took no action because he assumed that Mrs. Siegal would deal with the problem properly.

A portion of Mr. Siegal's deposition was then read in to evidence, in which Mr. Siegal was asked whether he believed that the letter from Father's attorney presented a serious question. In his deposition, Mr. Siegal said that, had he thought that the letter presented a serious question, he would have dealt with the garnishment himself.

At the conclusion of the hearing, the trial court held that the conditional judgment should be made final. On October 4, 2002, the trial court entered a final order consistent with its oral ruling. The trial court determined that Mother and the Siegals were "not credible at all." In light of that credibility determination, the trial court made the following findings of fact:

... That the Court concludes that beginning some years ago, both Mr. and Mrs. Siegal were completely indifferent to handling the garnishments correctly.

... That Mr. Siegal's own testimony today is one the Court can best characterize as reckless indifference. He is so cavalier with regard to even the importance of doing these garnishments correctly. He does not act as a reasonably prudent person in a management position should under the circumstances in responding to this court['s] order to garnish wages.

... That despite receiving the letter from [Father's counsel], ... to get his attention and try to make him care about something that he seems to be indifferent to, Mr. Siegal's response was that he did not see this as alarming; it did not cause Mr. Siegal much concern; he asked his wife, the same person that he is being told is not taking care of the garnishment properly, to take care of it. ...

... That the cavalier approach by Mr. and Mrs. Siegal can best be categorized

as a historical pattern of gross negligence and willful, reckless indifference in dealing with these garnishments.

... That the reason for the reckless conduct of the Siegals is their friendship with Mary Smith, which they do not want to characterize as a friendship.

... That the Siegals got caught up in this friendship, got a mind-set that they were going to protect [Mother], they were going to resist this; they were going to play games with this because it isn't right, she shouldn't have to pay all of this.

... That this process of obstruction occurred prior to the last garnishment and continued thereafter.

... That Julie Krute has, as a supervisor at Applied Industrial Technologies, pursued an ongoing pattern of gross negligence that existed before this event, continued through this event, and continues today.

... That this conduct of Julie Krute constitutes gross negligence; it is not a mistake; it is not a single act of simple negligence as in the cases cited by [Air Draulics]; it is gross negligence.

... That the fourth garnishment was not timely received by Ms. Krute.

... That Exhibit 2 shows how Mrs. Siegal continued in her misplaced efforts to help her friend by obstructing the processes of the Court wherein Mrs. Siegal writes "if this garnishment can be held up on this check, that would be great!"

... That Mrs. Siegal [and Ms. Krute have] been doing these for years and [are] imputed to know that payments on garnishments are supposed to go to the bankruptcy trustee....

... That on top of everything, ... that despite knowing on July 2nd of this year with absolute certainty that no answer had been filed, no answer still has been filed.

In accordance with these findings, the trial court held that the conditional judgment against Air Draulics in the amount of $82,817.40 should be made final. From this order, Air Draulics now appeals.

On appeal, Air Draulics first argues that the trial court erred in entering a conditional judgment against it for the entire debt, because it filed an answer to the garnishment prior to the July 19, 2002 hearing. Air Draulics asserts that, under the garnishment statutes, once an answer is filed, a conditional judgment is not warranted. In the alternative, even if the trial court was justified in entering a conditional judgment against it, Air Draulics argues, the trial court erred in entering a final judgment against Air Draulics in the amount of Mother's entire debt. Air Draulics asserts that this was error because its failure to pay under the garnishment was the result of ordinary negligence and, therefore, sufficient cause was shown for relief from the conditional judgment. Air Draulics also argues that this Court should exercise its discretion to reduce the amount of the final judgment, because it is grossly excessive under the circumstances.

 Because this case was decided by the trial court sitting without a jury, we review it *de novo* on the record, with a presumption that the trial court's findings of fact are correct, unless the preponderance of the evidence is otherwise. *See Ball Bros. Furniture Co. v. Ferren,* 1987 WL 12388, at *2 (Tenn.Ct.App. June 18, 1987); Tenn. R.App. P. 13(d). The trial court's conclusions of law are reviewed *de novo,* with no such presumption of correctness. *See State v. Levandowski,* 955 S.W.2d 603, 604 (Tenn.1997). Issues of statutory interpretation and the application of a statute to particular facts involve questions of law, subject to *de novo* review. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296

(Tenn.1997); *State ex rel. Comm'r of Transp. v. Medicine Bird Black Bear White Eagle,* 63 S.W.3d 734, 754 (Tenn.Ct. App.2001).

■ This appeal involves interpretation and application of the garnishment statutes. As background, a "[g]arnishment is in the nature of an attachment of a debt due the judgment debtor from the garnishee; and, service of the garnishment upon the garnishee is a warning to the garnishee not to pay the debt but to answer the garnishment and hold the fund subject to the orders of the Court." *Meadows v. Meadows,* 1988 WL 116382, at *3 (Tenn.Ct.App. Nov.2, 1988) (quoting *Stonecipher v. Knoxville Sav. & Loan,* 42 Tenn.App. 86, 298 S.W.2d 785 (1957)). If a garnishee answers the garnishment and admits a certain indebtedness to the judgment debtor, then a judgment against the garnishee in the amount of the admitted debt may be entered. *See* Tenn.Code Ann. § 29–7–112;[5] *Meadows,* 1988 WL 116382, at *3. However, evidence may be offered to show that a different amount of indebtedness is due. After the trial court ascertains the proper amount of the garnishee's indebtedness to the judgment debtor, it may enter a judgment on the garnishment against the garnishee. *Meadows,* 1988 WL 116382, at *3.

■ A conditional judgment for the entire amount of the judgment debtor's debt is a statutory remedy available against a garnishee if the garnishee fails to appear or answer the garnishment. *See In re Warner (First Tenn. Bank Nat'l Ass'n v. Warner),* 191 B.R. 705, 710 (Bankr.W.D.Tenn.1996). Such a conditional judgment is authorized under Tennessee

Code Annotated § 26–2–209, quoted above, which states that a conditional judgment may be entered "[i]f the garnishee fails to appear or answer." Tenn.Code Ann. § 26–2–209 (2000). The award of a conditional judgment is also addressed in Tennessee Code Annotated § 29–7–114:

> **§ 29–7–114. Default by garnishee— Conditional judgment.**—If, when duly summoned, the garnishee fail[s] to appear and answer the garnishment, the garnishee shall be presumed to be indebted to the defendant to the full amount of the plaintiff's demand, and a conditional judgment shall be entered up against the garnishee accordingly.

Tenn.Code Ann. § 29–7–114 (2000). Therefore, both statutes use language indicating that the conditional judgment is predicated on the garnishee's failure to appear and answer the garnishment. A conditional judgment is similar to a default judgment, in that both remedies recognize a failure to respond to process. *Meadows,* 1988 WL 116382, at *4. Unlike a default judgment, however, a conditional judgment does not admit facts alleged, but, rather, "[i]t is a threat of final judgment if [a] response should not be forthcoming. It is a means of inducing a response and a threat of penalty for failure, but it is not a judgment establishing any rights." *Id.;* see *Ball Bros.,* 1987 WL 12388, at *2 ("The conditional judgment is an enforcement tool."). The conditional judgment is not intended to be punitive, but is intended as an enforcement tool, a "wake up call" to the garnishee, a warning that a proper defense must be asserted to prevent the entry of a final judgment. *In re Warner,*

---

5. That statute provides:
... If it appears that the garnishee is indebted to the defendant, or has property and effects of the defendant subject to the attachment, the court may, in case recovery is had by the plaintiff against the defendant, give judgment against the garnishee for the amount of the recovery or of the indebtedness and property.
Tenn.Code Ann. § 29–7–112 (2000).

191 B.R. at 710–11. "[T]he conditional judgment gives 'another opportunity' to the garnishee 'to answer the garnishment.'" *Id.*

Air Draulics argues on appeal that a conditional judgment is warranted under the statutes only "[w]here no answer is made by the garnishee." *Meadows,* 1988 WL 116382, at *3. Because it had filed an answer to the garnishment at issue, Air Draulics argues, the trial court erred in entering the conditional judgment against it. Air Draulics acknowledges that its answer was untimely, filed on the eve of the hearing on the conditional judgment. It argues, however, that the filing of an answer, even though untimely, vitiates the basis for a conditional judgment.

Father and the Guardian argue that Air Draulics' filing of its answer was untimely and substantively deficient and, therefore, did not prevent the trial court from entering a conditional judgment. First, they argue, the purported answer was filed almost nine months after the original garnishment was served and, therefore, cannot be considered to suffice as an "answer" under the pertinent statutes. In addition, though the document filed by Air Draulics was titled an "answer," it failed to meet many of the requirements of an "answer" under the pertinent garnishment statutes. For example, Air Draulics' answer did not include a statement of Mother's dependent children under the age of sixteen, required under Tennessee Code Annotated § 26–2–214(a)(2), nor did it credit Mother with $2.50 per child, as is required under Tennessee Code Annotated § 26–2–107(a), all information necessary to calculate the exempt portions of Mother's salary. Father and the Guardian argue that other information required by statute was either insufficient or omitted altogether. Therefore, because the answer did not contain the proper aspects of an answer under the statutes, it would not prevent the trial court from entering a conditional judgment. Father and the Guardian also note that no funds were paid into court, as is required under Tennessee Code Annotated § 26–2–215.[6] Thus, they argue, the document filed by Air Draulics on July 18, 2001 was so deficient that it "amount[ed] to no answer at all," and the trial court had ample justification for entering a conditional judgment against Air Draulics for the entire amount of Mother's debt.

In interpreting a statute, the court is to give effect to the legislative intent. *Kyle v. Williams,* 98 S.W.3d 661, 664 (Tenn.2003). "Legislative intent is to be ascertained primarily from the natural and ordinary meaning of the language used." *Id.* Where the language of the statute is clear, the statute must be applied as written, with the presumption that the legislature "says in a statute what it means and means in a statute what it says." *Id.* (citing *Gleaves v. Checker Cab Transit Corp.,* 15 S.W.3d 799, 803 (Tenn. 2000)); *see also Schering–Plough Healthcare Prods., Inc. v. State Bd. of Equalization,* 999 S.W.2d 773, 775–76 (Tenn.1999).

The statutes at issue in the instant case are Tennessee Code Annotated §§ 26–2–209 and 29–7–114. Section 26–2–209 states that a conditional judgment "may be entered" against the garnishee "[i]f the garnishee fail[s] to appear or answer" the garnishment. Likewise, section 29–7–114 states that a conditional judgment "shall be entered" against the garnishee "[i]f ... the garnishee fail[s] to appear and answer the garnishment...." Thus, both

---

6. That statute provides:

The employer garnishee shall remit to the court all moneys [sic] withheld as provided under § 26–2–214 not less than one (1) time each calendar thirty (30) days.

Tenn.Code Ann. § 26–2–215 (2000).

statutes authorize the imposition of a conditional judgment *if* the garnishee fails to answer. In this case, Air Draulics in fact filed an answer prior to the imposition of a conditional judgment, though clearly the answer was untimely. The trial court made no determination as to whether the answer was "sufficient," i.e. contained all the necessary information required in an answer, under the garnishment statutes.[7]

The parties do not cite, nor have we found, a case determining whether a conditional judgment is an available remedy when the garnishee has filed an answer, albeit untimely or otherwise defective.[8] Cases discussing the function and purpose of a conditional judgment indicate that such a remedy is appropriate *only* if the garnishee fails to file an answer. *See ECI Bldg. Components, Inc. v. Chanl–Loc Docks, Inc.*, No. 03A01–9509–CH–00301, 1996 WL 93769, at *2 (Tenn.Ct.App. Mar.5, 1996) (stating that a conditional judgment "is available only when a garnishee fails to appear or answer"); *Meadows*, 1988 WL 116382, at *3 ("Where no answer is made by the garnishee, the statutory remedy is by 'conditional judgment'."); *see also In re Warner*, 191 B.R. at 709 ("The garnishee is, however, required to respond or risk total liability."). Moreover, the plain language of the statutes authorizes the imposition of a condi-tional judgment *if* the garnishee fails to answer the garnishment. There is no language in the statutes indicating that if the answer is not timely or sufficient, a conditional judgment may be entered. The conditional judgment remedy is clearly intended to be a "wake-up call" to the garnishee, warning the garnishee that it must present a defense to the statutorily imposed presumption that it is indebted to the plaintiff "to the full amount of the plaintiff's demand." *See* Tenn.Code Ann. § 29–7–114 (2000). If the garnishee files an answer before the conditional judgment is imposed, this obviates the need for such a "wake-up call."

In this case, the answer filed by Air Draulics admitted that Mother was employed during the pertinent period, provided information about her salary, and asserted that the reason for its failure to answer the garnishment in a timely manner was due to simple negligence. The answer stated in part:

9. At the time Air Draulics was served with the October 2001 garnishment, Ms. Smith was an employee of Air Draulics and her bi-weekly gross earnings were $1,333.60 and her net bi-weekly earnings were $1,041.15. As set forth hereinabove, the sum of $290.77 was withdrawn from Ms. Smith's net earnings on a bi-weekly basis pursuant to the

7. Air Draulics argues that no issue regarding the sufficiency of its answer was raised to the trial court, and that consequently, it cannot be raised in this appeal. Our holding makes it unnecessary to address this issue in this appeal.

8. Father and the Guardian cite *Ancro Fin. Co. v. Johnson*, No. W2000–02709–COA–R3–CV, 2001 WL 1298913 (Tenn.Ct.App. Oct.23, 2001), to support their argument that a conditional judgment may be entered if the garnishee's answer is insufficient. The trial court in that case did indeed enter a final judgment against the garnishee, even though a purported answer had been filed by the garnishee several weeks earlier. However, the garnishee in that case did not attend the subsequent *scire facias* hearing, resulting in a judgment against it. The garnishee did not appeal the judgment, but instead challenged the decision by filing a writ of certiorari and supersedeas in the circuit court. The circuit court denied the writ. On appeal, this Court's review was limited to determining whether the trial court had properly denied the writ. Therefore, the propriety of the trial court's decision to enter a conditional judgment was not at issue in the appeal, and *Ancro* is therefore not applicable to this case.

court-ordered income assignment for child support. The amount withheld pursuant to the income assignment represented 27.9% of Ms. Smith's net bi-weekly earnings at the time the garnishment at issue was served on Air Draulics.

10. Ms. Smith continues to be an employee of Air Draulics as of the present date. Her current gross bi-weekly earnings are $1,387.20 per month. Her average bi-weekly net earnings are $1,092.63 from which the amount of $290.77 continues to be withheld pursuant to the court ordered income assignment. Ms. Smith is single and is claiming no dependents.

This is sufficient to constitute an answer and rebut the statutory presumption that Air Draulics was indebted to Father and the Guardian for the entire amount of Mother's debt. Under all of these circumstances, we must conclude that the garnishment statutes do not authorize the trial court's entry of a conditional judgment against Air Draulics.

We are mindful of the trial court's explicit findings that the agents of Air Draulics acted in bad faith, that they persistently worked in concert with Mother to defeat the garnishments against her, and that Krute was grossly negligent in her handling of the garnishment at issue. We do not address what remedies, penalties or sanctions, if any, may be available to Father and the Guardian for Air Draulic's misconduct. We hold only that, under the plain language of the garnishment statutes at issue, a conditional judgment was not among the available options.

The decision of the trial court is reversed and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal are to be taxed to Appellees James Roy Smith, Jr., and Terese B. Deboo, for which execution may issue, if necessary.