IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 22, 2010 Session

# DEXTER RIDGE SHOPPING CENTER, LLC
v.
# DAVID N. LITTLE, KAREN LITTLE AND LITTLE ANTIQUES, LLC, D/B/A ANTIQUE MARKET OF CORDOVA
AND
# AMERICAN NATIONAL PROPERTY & CASUALTY COMPANY AND REID JONES D/B/A REID JONES INSURANCE AGENCY

An Appeal from the Chancery Court for Shelby County
No. CH-07-0172-3     Kenny W. Armstrong, Chancellor

_____

No. W2009-01798-COA-R3-CV - Filed September 22, 2010

_____

This appeal involves service of a garnishment.  In the underlying action, the plaintiff recovered a judgment against the defendant debtor.  At the time, the judgment debtor was an independent insurance agent located in Tennessee. In a discovery response, the debtor stated that he worked for a Missouri insurance company, but he listed his Tennessee office as his work address.  The plaintiff issued a garnishment to the Missouri insurance company as the garnishee, and had it served at the Tennessee address, where it was accepted by a front-desk employee.  The employee gave the garnishment to the debtor.  Therefore, the garnishee did not receive the garnishment and did not respond.  The trial court issued a conditional judgment and scheduled a hearing for the garnishee to appear and show cause why the conditional judgment should not be made final.  After the hearing, the trial court found that the employees at the Tennessee insurance office were not agents of the garnishee Missouri company, and that service of the garnishment was not effective.  The trial court therefore vacated the conditional judgment. The plaintiff-garnishor now appeals. We affirm and agree with the trial court that service of the garnishment was not effective.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Julie C. Bartholomew, Somerville, Tennessee, for the appellant, Dexter Ridge Shopping Center, LLC

Don G. Owens, III, Memphis, Tennessee, for the appellees, American National Property and Casualty Company and Reid Jones d/b/a Reid Jones Insurance Agency

**OPINION**

**FACTS AND PROCEEDINGS BELOW**

*Garnishment*

Defendant David Little ("Debtor") leased property from Plaintiff/Appellant Dexter Ridge Shopping Center, LLC ("Garnishor"). Debtor operated an antique business on the property.[1] In 2008, Garnishor filed a lawsuit against Debtor and his antique business for breach of the lease agreement. In April 2008, Garnishor was awarded a judgment against the defendants in the amount of $22,580.55 plus costs.[2]

Subsequently, to aid in execution of the judgment, Garnishor served interrogatories on Debtor. One of the interrogatories asked Debtor to state his "occupation and identify your employer or any business from which you receive any compensation for your services and give the address for each, including street, number, city, state, zip code, and the name or title of your position." Debtor responded: "Insurance agent: ANPAC [American National Property and Casualty Co.], 657 S. White Station Road, Memphis, Tennessee 38117."

The White Station Road address listed in Debtor's interrogatory response is not in fact the address for ANPAC; it is actually the address for the Reid Jones Insurance Agency (also called "the Agency"). Mr. Reid Jones is a general insurance agent for ANPAC, and Debtor is a sub-agent for ANPAC, under Mr. Jones. Debtor rents office space from the Agency at the White Station Road address. ANPAC is a corporation based in Springfield, Missouri. The commission payments for Debtor and Mr. Jones are directly deposited into their individual bank accounts from the Missouri ANPAC office.

On October 22, 2008, to execute on the judgment against Debtor, Garnishor issued a writ of garnishment to ANPAC at the White Station Road address provided by Debtor. On October

---

[1]The name of the business was Little Antiques, LLC, d/b/a Antique Market of Cordova.

[2]Debtor's wife was also named as a defendant in that lawsuit. She entered into an out-of-court settlement with Garnishor before a final judgment was entered against Debtor and the antique business.

28, 2008, counsel for Garnishor signed a Garnishor's affidavit listing the garnishee as "ANPAC 657 S. White Station Road Memphis, TN 38117." On November 13, 2008, the garnishment was served on ANPAC at that address. It was returned as being served upon "Pamela Jones . . . Office Adm." The person listed on the return, Pamela Jones ("Mrs. Jones"), is the wife of Reid Jones; she is employed as the office administrator at the Reid Jones Insurance Agency.

After Mrs. Jones received the garnishment, she telephoned Debtor to let him know. Mrs. Jones also told Mr. Jones about the garnishment. Debtor came to the White Station Road office, took the garnishment, and assured Mr. and Mrs. Jones that the garnishment was being "taken care of." Neither Mr. or Mrs. Jones took any further action on the garnishment, based on Debtor's assurance that he was handling the matter.

As of December 30, 2008, no answer to the writ of garnishment had been filed, and the time for filing an answer had expired. On that date, Debtor filed in the trial court below a "Motion to Set [Installment] Payments."[3] Under the applicable statute, the filing of a motion to set payments operates as a stay on the execution of the garnishment, so long as the debtor complies with the orders of the court. *See* T.C.A. § 26-2-216.

### *Scire Facias Proceedings*

On January 13, 2009, before the Debtor's motion to set payments had been heard, the trial court entered a conditional judgment against ANPAC, as the garnishee, for the entire amount of the garnishment. The order further issued a writ of *scire facias*,[4] directing ANPAC to appear at a hearing scheduled for February 18, 2009, to show cause why the conditional judgment should not be made final. The order was served on ANPAC at the White Station Road address.

On February 18, 2009, the trial court convened the *scire facias* hearing as scheduled, but the only representative in attendance was counsel for Garnishor. The trial court judge had a court employee telephone ANPAC at the White Station Road office, and she reached Reid Jones. Mr. Jones called ANPAC at the Missouri office to inform them about the garnishment and the *scire facias* hearing taking place that day. ANPAC then had local counsel meet Mr.

---

[3]Debtor's petition also requested that settlement proceeds received by Garnishor from Debtor's wife be applied toward the amount of the judgment. Issues involving the application of that settlement amount to the judgment are not relevant to the issues in this appeal.

[4]"*Scire facias*" is a Latin term meaning to "show cause." BLACK'S LAW DICTIONARY 1347 (7th ed. 1999). In practice, it is "[a] writ requiring the person against whom it is issued to appear and show cause why some matter of record should not be annulled or vacated . . . ." *Id.*

Jones at the hearing before the trial court to represent ANPAC. After Mr. Jones and counsel for ANPAC appeared, the trial court declined to enter a final judgment; it re-set the matter for March 17, 2009.

On March 2, 2009, the trial court conducted a hearing on Debtor's motion to set payments. On April 6, 2009, the trial court entered an order requiring Debtor to begin making payments of $300 per month on March 15, 2009.[5]

Meanwhile, on March 13, 2009, ANPAC filed a motion to set aside the conditional judgment against it and to dismiss any application to make the judgment final, based on insufficiency of service of process and lack of personal jurisdiction. Attached to the motion was the affidavit of Stuart Paulson ("Paulson"), Vice-President/Deputy General Counsel and Assistant Corporate Secretary for ANPAC. In his affidavit, Paulson stated that ANPAC is a Missouri corporation licensed to do business in Tennessee, and that ANPAC's registered agent for service of process is either Billy Prestridge, 4515 Harding, Suite 310, Nashville, Tennessee, 37205, or the Tennessee Commissioner of Insurance. Paulson averred that ANPAC does not maintain offices in Tennessee, and that Pamela Jones was not authorized to accept service of process on behalf of the company. Based on the information in Paulson's affidavit, ANPAC argued that it was not properly served with the garnishment, and that the conditional judgment should be dismissed.

On March 17, 2009, the second *scire facias* hearing was held, at which counsel for Garnishor and counsel for ANPAC were present. As of that date, ANPAC had not filed an answer to the garnishment. ANPAC took the position that no answer was necessary because the garnishment had not been properly served. The trial court nevertheless instructed ANPAC and the Reid Jones Insurance Agency to each file an answer to the garnishment. The *scire facias* hearing was again rescheduled for June 4, 2009.

On April 30, 2009, as instructed, the Reid Jones Insurance Agency filed an answer to the garnishment. The answer stated that Pamela Jones is the office administrator for the Agency, and she is not an agent for ANPAC. It also stated that Debtor was not an employee of the Agency. The Agency's answer asserted that "Reid Jones Insurance has made no payments to [Debtor] for wages or any other compensation from the date of service of the Garnishment . . . to date."

---

[5]The trial court also granted the Debtor's motion to credit Debtor with the $15,000 received by Garnishor from Debtor's wife.

On May 6, 2009, ANPAC filed its answer to the garnishment. In the answer, ANPAC set out the amount of the funds paid to Debtor for each month from November 13, 2008, through April 2009, a total of about $30,000.

Also on May 6, 2009, Garnishor filed a motion to reinstate the garnishment because Debtor was not making the scheduled payments. On May 26, 2009, the trial court entered an order setting a hearing date for the Garnishor's motion to reinstate the garnishment. However, on May 29, 2009, before the scheduled hearing, Debtor filed a petition in bankruptcy, which stayed any further proceedings against Debtor.

On June 3, 2009, ANPAC filed a response to the order issuing a writ of *scire facias*, making the same substantive arguments made in its motion to set aside the conditional judgment, in particular that ANPAC was not properly served with the garnishment.

On the morning of the June 4, 2009 *scire facias* hearing, ANPAC filed a supplemental response to the *scire facias* order, arguing that, in any event, it would have no obligation to withhold payments from Debtor that were made after December 30, 2008, the date on which Debtor filed his motion to set payments pursuant to Tennessee Code Annotated § 26-2-216. ANPAC also filed a supplemental answer to the garnishment. Also on the same date, June 4, 2009, Reid Jones and the Agency filed a motion to quash the conditional judgment or, in the alternative, to set aside the conditional judgment,[6] arguing that their failure to answer the garnishment before the conditional judgment was entered was due to mistake, inadvertence, and/or excusable neglect. They also asserted that the garnishment was not properly served, that it was stayed by the Debtor's motion to set payments, and that the named garnishee was ANPAC, not the Agency.

On June 4, 2009, the *scire facias* hearing was conducted as scheduled. Pamela Jones testified that she is employed by the Reid Jones Insurance Agency. She said that, as the Agency's office administrator, she performs general duties such as answering the telephones, cleaning the bathrooms, and managing office supplies. She also collects the mail, noting that others collect the mail at times. Mrs. Jones was shown several items that had been mailed to the Agency over the prior week; many of them were addressed in a way that included "ANPAC" in the title, such as "ANPAC" or "Reid Jones Agency, American National." This included mail from the ANPAC Missouri office. Mrs. Jones identified a photograph of the brick mailbox at the White Station Road address, which included an "American National" sign and logo, as well as a sign advertising "Ca$hback from ANPAC," with "Reid Jones — Multiple Line General Agent" underneath. Mrs. Jones said that the Agency had been doing business

---

[6]Though the motion is styled as one to quash the conditional order, it is apparent that it was intended to be a motion to quash a subpoena *duces tecum* served on the Agency.

with ANPAC for twenty-five years; the mailbox sign had been displayed for only five or six years.

Mrs. Jones testified that she is paid directly by the Reid Jones Insurance Agency. In contrast, the insurance agents who sell ANPAC policies receive their compensation directly from the ANPAC Missouri office. She explained that Reid Jones, as the office manager, receives a commission from all ANPAC insurance sales made in the office. However, the Agency did not compensate its salespeople directly. Mrs. Jones said that she knew when she received service of the garnishment that it had been issued to the wrong office, because her office did not issue payments to the insurance agents. However, she did not act on this knowledge.

Mrs. Jones indicated that, after she received service of the garnishment, she told both Mr. Jones and the Debtor about it. She said that Debtor took the garnishment and told her that "he would give it to his attorney and they would take care of it." She took no further action on the garnishment because she assumed that Debtor had "taken care of" it. Mrs. Jones did not recall getting a telephone call about the garnishment from counsel for Garnishor in December 2008, and she did not remember receiving a copy of the conditional judgment at the office.

Mr. Reid Jones also testified at the hearing. He has been affiliated with ANPAC for over twenty-five years, with his office at the White Station Road location for about five years. Mr. Jones testified that he is not an employee of ANPAC, but rather is an independent contractor; he conducts business on behalf of ANPAC, and is compensated by ANPAC. Mr. Jones said that he no longer personally sells insurance contracts, but instead he has sub-agents, such as Debtor, who sell for him. Mr. Jones stated that he is authorized to sell insurance for ANPAC, but he is not authorized to manage any business or accept service of process for the company and has never held himself out as being authorized to accept service of process on behalf of ANPAC.

Mr. Jones testified that Mrs. Jones told him about the garnishment when it was served, and that he asked Debtor about it. Debtor assured Mr. Jones that the garnishment was in the wrong amount, that some of it had already been paid, and that his attorney had taken care of the matter. Therefore, Mr. Jones felt comfortable not taking any action on the garnishment. He said that when he received a copy of the conditional judgment and writ of *scire facias* in January 2009, he faxed the order directly to the ANPAC office in Missouri. Mr. Jones said that he expected ANPAC's counsel to attend the February 2008 hearing; ANPAC did not ask him to appear.

Debtor testified at the hearing. He stated that Mrs. Jones called him after she received copies of the garnishment in November 2008; he made copies of the garnishment and sent it to his

attorney.  Debtor acknowledged that he told Mr. and Mrs. Jones that he had taken care of the garnishment by giving it to his attorney, and that the Reid Jones Insurance Agency need not do anything more.  Debtor did not discuss the garnishment with anyone at the ANPAC office in Missouri.  He called his attorney, who told him that he intended to have the garnishment stayed.  Debtor believed that his interrogatory answer, identifying the White Station address as his place of employment, was accurate as answered.  Debtor testified: "ANPAC is where the compensation comes from," explaining that ANPAC is in Missouri.  He explained further, "657 White Station Road is Re[i]d Jones Agency and I rent space in his office."

ANPAC representative Stuart Paulson ("Paulson") testified at the hearing.  He explained that ANPAC does not maintain an office at the White Station Road address, but has a contractual relationship with the Reid Jones Insurance Agency.  Paulson had never seen the ANPAC sign on the mailbox of the Reid Jones Insurance Agency.  He said that no one at the Reid Jones Insurance Agency was an officer or managing agent of ANPAC, and no one at the Agency was authorized to accept service of process for ANPAC.  In fact, Paulson stated, there was no person in Tennessee other than the designated agent for service of process who was either expressly or impliedly authorized to accept service of process on behalf of ANPAC, and no one had held themselves out to be so authorized.

Paulson testified that he was not aware of the November 2008 garnishment when it was served; the first he had heard about it was when he received the telephone call from  Reid Jones in February 2009.  At that point, Paulson obtained local counsel to respond to the garnishment and conditional judgment, and from then on relied on counsel to handle the matter.

Counsel for Garnishor testified as a witness regarding a telephone conversation she had with Mrs. Jones in December 2008.[7]  During that conversation, she said, she advised Mrs. Jones that she was the attorney for Garnishor and inquired as to whether an answer had been filed to the garnishment.  Mrs. Jones responded that no answer had been filed, and that she had given the garnishment to Debtor.  Counsel said that she informed Mrs. Jones that the garnishment required an answer and advised that Mrs. Jones speak to her attorney.  Counsel for Garnishor testified that she did not ask anyone at the White Station Road address whether they were officers of ANPAC before she had the garnishment issued.

---

[7]An objection was initially made to the admission of the attorney's testimony; that objection was later withdrawn and the testimony was permitted.

## *Trial Court's Decision*

At the conclusion of the hearing, the trial court vacated the conditional judgment, making an oral finding that the garnishment was not properly served on ANPAC. The trial court found that Mrs. Jones was not an employee or an agent of ANPAC, and that she was not authorized to receive service of process for ANPAC. The trial court found no collusion between the Reid Jones Insurance Agency and ANPAC to not honor the garnishment.

On July 28, 2009, the trial court entered a written order consistent with its oral ruling. The order set forth the following findings:

> (1) that there is no authority for entry of final judgment against a garnishee whose untimely answer to the garnishment fails to reveal the debtor's property, debts, and effects under the control of any other person, although the garnishee had such knowledge at the time of the garnishment;
> (2) that entry of a final judgment against ANPAC/American National or against Reid Jones Insurance Agency for an obligation owed by the judgment debtor would be punitive and that the garnishment statute is not designed to be punitive as to garnishees;
> (3) that the proof does not support a finding of collusion on the part of ANPAC and Reid Jones Insurance Agency to fail to honor the garnishment;
> (4) that the garnishment which was issued to ANPAC was served upon Pamela Jones, who was an employee of Reid Jones Insurance Agency, but was not an employee or agent of ANPAC and was not authorized to accept service of process on behalf of ANPAC and, and [sic] therefore, as to ANPAC/American National, the Court finds that there is insufficient service of process, that the Conditional Judgment should be vacated as to ANPAC/American National, and that the application to make said conditional judgment final as to ANPAC/American National should be denied;
> (5) that the garnishment was issued to ANPAC, that Reid Jones Insurance Agency is not ANPAC, is not an agent of ANPAC, and is not authorized to receive service of process on behalf of ANPAC, and therefore, the Conditional Judgment should be vacated as to Reid Jones Insurance Agency and the application to make said Conditional Judgment final as to Reid Jones should be denied.

Based on these findings, the trial court denied Garnishor's application to make the conditional judgment final and vacated the conditional judgment. From this order, Garnishor now appeals.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Garnishor argues that the trial court erred in determining that the garnishment was not properly served upon ANPAC by service upon the Reid Jones Insurance Agency through Pamela Jones, office manager. In the alternative, it argues that the failure of either ANPAC or its agent, Mr. Reid Jones, to comply with the garnishment statute amounted to gross negligence, not simple negligence, and ANPAC and Reid Jones should be held liable for any intentional conduct that caused Garnishor to lose garnished funds. Garnishor asks this Court to remand the case to the trial court for a determination of damages.

Because this case was decided by the trial court without a jury, we review the trial court's findings of fact *de novo* on the record, presuming those facts to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). The trial court's conclusions of law are to be reviewed *de novo*, with no such presumption of correctness. ***Reality Shop, Inc. v. RR Westminster Holding, Inc.***, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Issues of statutory construction are issues of law, which we review *de novo*. ***Leab v. S & H Mining Co.***, 76 S.W.3d 344, 348 (Tenn. 2002).

## ANALYSIS

As background:

> Garnishment is in the nature of an attachment of a debt due the judgment debtor from the garnishee; and, service of the garnishment upon the garnishee is a warning to the garnishee not to pay the debt but to answer the garnishment and hold the fund subject to the orders of the Court.

***Meadows v. Meadows***, No. 88-135-II, 1998 WL 116382, at *3 (Tenn. Ct. App. Nov. 2, 1988) (citing ***Stonecipher v. Knoxville Savs. & Loan***, 298 S.W.2d 785, 787 (Tenn. 1957)). Under the applicable statutes, the attachment of a debtor's property by garnishment is effected when the garnishee is informed in writing that the debtor's property in the possession of the garnishee is being attached, and the garnishee must appear in court to answer questions relating to the matter:

> (a) Attachment by garnishment is effected by informing the debtor of the defendant, or person holding the property of the defendant, that the property in the defendant's hands, or the hands of the person holding the property of the defendant, is attached, and by leaving with the defendant or such other person a written notice that the defendant or such other person is required to appear at the return term of the attachment, or before a judge of the court of general

-9-

sessions, at a time and place fixed, to answer such questions as may be asked the defendant or such other person touching the property and effects of the defendant.

T.C.A. § 29-7-103(a) (2000). "A copy of the notice served upon the garnishee should be returned by the officer, with the attachment and levy, duly executed." T.C.A. § 29-7-106 (2000). Under Tennessee Code Annotated § 26-2-216, if the garnishee is a corporation, the person serving the garnishment must obtain a receipt acknowledging service of the summons "signed by an officer, managing agent or designated agent for service of the employer garnishee":

> (b)(1) It is the duty of the sheriff or other officer serving the garnishment summons upon the employer garnishee to:
> (A) Obtain a receipt acknowledging service of such summons signed by the employer garnishee, if a person, or *signed by an officer, managing agent or designated agent for service of the employer garnishee, if a corporation*, company or business entity; or
> (B) Sign and return to the court a sworn statement to the effect that the summons was duly served but such employer garnishee or such officer, managing agent or designated agent of the employer garnishee refused to sign a receipt acknowledging service; and
> (C) The garnishment summons served by the sheriff shall have attached a notice to the employer that the employer is required to withhold the garnishment amount from the employee's wages, that the employer is required to pay these moneys to the court, and that the employer is liable for failure to withhold from the garnishee's wages and for failure to pay these moneys to the court.

T.C.A. § 26-2-216 (Supp. 2009) (emphasis added).

If the garnishment is properly served, the garnishee must answer the garnishment, indicating any assets the garnishee holds that belong to the debtor. "If the garnishee answers the garnishment and admits a certain indebtedness to the judgment debtor, then a judgment against the garnishee in the amount of the admitted debt may be entered." *Smith v. Smith*, 165 S.W.3d 285, 293 (Tenn. Ct. App. 2004) (citing T.C.A. § 29-7-112). If there is any dispute as to the amount of the garnishee's indebtedness to the judgment debtor, or as to whether there is any such indebtedness, the trial court may receive evidence on the

indebtedness of the garnishee to the debtor. If, after proper service, the garnishee fails to answer, there is a presumption that the garnishee is indebted to the debtor "to the full amount of the plaintiff's demand, and a conditional judgment shall be entered" against the garnishee. T.C.A. § 29-7-114 (2000); *see Meadows*, 1988 WL 116382, at *3.

A conditional judgment has been described as a "peculiar remedy," because it is similar to a default judgment, but it does not establish any enforceable rights. ***See First Tenn. Bank Nat'l Assn. v. Warner (In re Warner)***, 191 B.R. 705, 710 (Bankr. W.D. Tenn. 1996) (applying Tennessee law in the context of a bankruptcy); *see also Meadows*, 1988 WL 116382, at *3-4. Rather, it is a threat of judgment, designed to induce the garnishee to respond to the garnishment:

> A conditional judgment is somewhat similar to a default judgment, but is not identical. Both recognize a failure to respond to process. Both provide a possible substitute for evidence. However, there are distinct differences. The default judgment declares an admission of facts alleged in the complaint, but leaves unliquidated damages for future proof. The conditional judgment is what the name implies. It is a threat of final judgment if response should not be forthcoming. It is a means of inducing a response and a threat of a penalty for failure, but it is not a judgment establishing any rights.
>
> The conditional judgment is a notification to the garnishee that *if* he does not make timely answer, the Court will presume that he (the garnishee) is indebted to the judgment in an amount sufficient to satisfy the judgment.

*Meadows*, 1988 WL 116382, at *4 (citing 49 C.J.S. Judgments § 73, p. 192); *see also Smith*, 165 S.W.3d at 293-94. The purpose of a conditional judgment is to give the garnishee additional time or another opportunity to answer the garnishment. *Meadows*, 1988 WL 116382, at *4. As noted by the trial court below, the conditional judgment is not intended to be punitive, but is intended to be an enforcement tool.

Upon the entry of a conditional judgment, "a scire facias shall issue to the garnishee . . . to show cause why final judgment should not be entered against the garnishee." T.C.A. § 29-7-115 (2000); *see In re Warner*, 191 B.R. at 709. If, after proper service, the garnishee fails to appear at the *scire facias* hearing, a final judgment for the debtor's entire indebtedness may be entered against the garnishee. *See* T.C.A. § 29-7-114. In sum, the garnishee is "required to respond or risk total liability." *In re Warner*, 191 B.R. at 709. "While these procedures may yield harsh results as to the garnishee, the harshness is ameliorated by the ease with which the garnishee may respond to the garnishment, including by a written answer." *Id.* (citing T.C.A. § 29-7-103(b))*.*

Obviously, before these procedures apply, the garnishee must be given sufficient notice of the garnishment. *Id.* In the absence of proper service, the plaintiff has no rights against the garnishee:

> Prior to proper service of the garnishment process on the garnishee, the plaintiff does not have rights against the garnishee. The garnishee is bound only from the time of the service of the writ. The fact that a someone knows about an unsatisfied judgment or potential garnishment does not impose liability. On the other hand, when service is effected, the garnishment renders the garnishee liable for all property or money in the garnishee's possession or control owed to the principal defendant at the time of the service.

38 C.J.S. *Garnishment* § 214 (2010) (footnotes omitted). Due process requires that proper notice be given before any final judgment is entered against a garnishee:

> Throughout the entire garnishment process, due process demands that the garnishee have proper notice of the efforts to obtain both conditional and final judgments against the garnishee, and this Court should not enter a final judgment against the garnishee until the Court is satisfied that the garnishee has been properly served and has had an opportunity to be heard.

*In re Warner*, 191 B.R. at 711 (harmonizing Tennessee's garnishment statutes with the Bankruptcy Code).

In light of this legal framework, we consider the issues raised on appeal by Garnishor.

### *Waiver*

At the outset, Garnishor argues that ANPAC waived any challenge to the service of the garnishment. By appearing at the February 2008 hearing and failing to object to service at that time, Garnishor contends, ANPAC made a voluntary general appearance, which waives all defects in the garnishment summons or in its service. *See Moody & Bigelow v. Alter, Winston & Co.*, 59 Tenn. 142 (1873). ANPAC and the Reid Jones Insurance Agency (collectively, "Appellees") point out that there is no transcript of the February 18, 2008 hearing in the appellate record, so it cannot be determined whether either ANPAC or the Reid Jones Insurance Agency made a general appearance at that hearing. They argue that the first appearance by ANPAC on the record is ANPAC's motion to set aside the conditional judgment based on insufficiency of service of process filed on March 13, 2009. Therefore, they argue, based on this record, this Court cannot conclude that a general appearance was

made before any objection to service, or that any of ANPAC's defenses were waived by such an appearance.

We agree with ANPAC that the record is insufficient for this Court to find that it waived any defenses to the garnishment by appearing at the February 2008 hearing. Moreover, the appellate record does not reflect that Garnishor asserted waiver to the trial court during the proceedings below. "It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court." *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010). Therefore, we respectfully decline to adopt Garnishor's waiver argument because the record does not show a general appearance by ANPAC, and it does not show that Garnishor raised the issue of waiver in the trial court below.

### Reid Jones as "managing agent"

Garnishor next argues that the trial court erred in determining that Reid Jones[8] was not a "managing agent" of ANPAC under Tennessee Code Annotated § 26-2-216, which provides that a garnishment on a corporation must be served upon "an officer, managing agent or designated agent for service of the employer garnishee . . . ." T.C.A. § 26-2-216 (emphasis added). It argues that the evidence preponderates in favor of a finding that Reid Jones was a "managing agent" of ANPAC, relying on evidence that mail sent to the White Station Road office was addressed to "ANPAC" or "American National," that the insurance agents working out of that address were ANPAC sales agents, and that the mailbox sign for the office referred to "American National" and "ANPAC," not to the "Reid Jones Insurance Agency." The Garnishor argues further that Pamela Jones, as an employee of Mr. Jones, was a "sub-agent," and that service of the garnishment on her constituted sufficient service under the statute.

We disagree. The evidence in the trial court below established that Reid Jones is an independent insurance agent selling and servicing ANPAC insurance policies out of his White Station Road office. The fact that Reid Jones received mail as an ANPAC *insurance* agent does not make him a "*managing* agent" for ANPAC's corporate business. The undisputed evidence showed that ANPAC is domiciled in Missouri, and that Debtor's commission payments were made from the Missouri office. Garnishor produced no evidence that Mr. Jones "manages" anything for ANPAC or is otherwise authorized to accept service of process on behalf of ANPAC. Moreover, as emphasized by ANPAC and Reid Jones on appeal, service was not on Mr. Jones, it was on Mrs. Jones. Garnishor dubs Mrs. Jones a

---

[8]The record indicates that Reid Jones Insurance Agency is a sole proprietorship, a "d/b/a" for Mr. Reid Jones. Therefore, because the Agency is not a separate legal entity, we address only Mr. Reid Jones individually.

"sub-agent" without any citation to authority for the assertion that service on an employee of an alleged "managing agent" equates to service on the alleged managing agent.

Here, the evidence shows that service was made on a clerical employee of an independent contractor for the Garnishee. This in no way amounts to service on "an officer, managing agent or designated agent for service of process" of the Garnishee. T.C.A. § 26-2-216.

### Apparent Authority

Garnishor next argues that service upon Pamela Jones at the Reid Jones Insurance Agency must be deemed proper under the law of agency and apparent agency. It argues that whether Reid Jones is an independent contractor is not determinative; rather, the primary focus in determining whether a person or entity is an agent for an employer is the employer's right of control over the work done for the employer, whether or not that control was exercised. *Youngblood v. Wall*, 815 S.W.2d 512, 517 (Tenn. Ct. App. 1991). Thus, even if Mr. Jones is found to be an independent contractor, Garnishor argues, he can still be deemed an apparent agent for ANPAC, and ANPAC can be bound by the acts of Mr. Jones performed within the scope of his agency. *See V.L. Nicholson Co. v. Transcon Inv. Fin. Ltd.*, 595 S.W.2d 474, 483 (Tenn. 1980).

Garnishor also claims that Reid Jones had the apparent authority of a managing agent for ANPAC. Furthermore, Garnishor argues, when a sub-agent is employed to perform part of the agent's general duty, that sub-agent's conduct is also binding upon the principal. *Eve v. Union Centr. Life Ins. Co.*, 167 S.W.2d 8, 12 (Tenn. Ct. App. 1942). Therefore, Garnishor claims, the evidence shows that Reid Jones had either apparent or ostensible authority to manage the affairs of ANPAC, and that Mrs. Jones was an apparent or ostensible sub-agent of ANPAC who had authority to receive, handle, distribute, and remit to ANPAC business documents and correspondence of ANPAC on a daily basis. Garnishor points to evidence that the sign on the White Station Road address mailbox read "American National" and "ANPAC," and that the mail sent to that office was addressed to both "American National" and "ANPAC." Therefore, Garnishor contends, service of the garnishment on Mrs. Jones constituted proper service on ANPAC.

Tennessee courts have defined apparent authority as "the power held by the putative agent 'to affect a principal's legal relations with third parties when a third party reasonably believes the [putative agent] has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.' " *Barbee v. Kindred Healthcare Operating, Inc.*, No. W2007-00517-COA-R3-CV, 2008 WL 4615858, at *6 (Tenn. Ct. App. Oct. 20, 2008). Apparent authority is created "where a person by words or conduct represents or permits it to be represented that another person is his or her agent, when no actual agency exists."

*Raspberry v. Campbell*, No. W2006-01668-COA-R3-CV, 2007 WL 2471512, at *3 (Tenn. Ct. App. Aug. 31, 2007) (quoting 2A C.J.S. *Agency* § 140 (2003)). In other words, "apparent authority exists when a principal's conduct clothes the agent with the appearance of authority." *Id.* (quoting *Volunteer Concrete Walls, LLC v. Cmty. Trust & Banking Co.*, No. E2006-00602-COA-R3-CV, 2006 WL 3497894, at *2 (Tenn. Ct. App. Dec. 4, 2006) (quoting *S. Ry. Co. v. Pickle*, 197 S.W.2d 675, 677 (Tenn. 1917))). Apparent authority rests on principles of estoppel. If a principal has cloaked an agent with apparent authority to act on behalf of the principal, then the principal is estopped from denying liability for the acts of the agent when the agent exercises that authority. *Milliken Group, Inc. v. Hays Nissan, Inc.*, 86 S.W.3d 564, 569 (Tenn. Ct. App. 2001). The principal will not be deemed responsible for the acts of the putative agent where only the agent's own conduct has created the appearance of agency. *Barbee*, 2008 WL 4615858, at *7, *9.

Thus, the law on apparent and ostensible authority focuses on the *principal's* actions in creating the appearance that the putative agency has actual authority. In this case, Garnishor points to no evidence indicating that ANPAC took actions or "permit[ted] it to be represented" that Mr. Jones, Mrs. Jones, or any other person at the White Station Road address had authority to manage ANPAC's business or to accept service of process for ANPAC. *Raspberry*, 2007 WL 2471512, at *3. As testified by ANPAC representative Paulson, ANPAC has a specified designee for service of process in Tennessee, or the corporation can be served through the Tennessee Commissioner of Insurance.

Even assuming *arguendo* that the inclusion of ANPAC on the sign on the mailbox at the Reid Jones Insurance Agency could be seen as creating the appearance of agency to accept service for ANPAC, ANPAC representative Paulson testified that he had never seen the sign before the hearing, and there is no evidence that it was procured or approved by anyone at ANPAC. Garnishor's belief that the White Station Road address was correct was based on Debtor's interrogatory response, not on the sign or any representation of ANPAC or the Reid Jones Insurance Agency. The fact that Reid Jones received mail addressed to ANPAC in Shelby County does not indicate that he enjoyed any authority outside of his role as an insurance agent who sells and services ANPAC policies in the county.

Most importantly, we emphasize again that the garnishment was served on Pamela Jones, not Reid Jones. There is no evidence in the record that ANPAC engaged in conduct which would "clothe [Mrs. Jones] with the appearance of authority" to accept service on behalf of ANPAC. *Volunteer Concrete*, 2006 WL 3497894, at *2 (quoting *S. Ry. Co.*, 197 S.W.2d at 677). Therefore, we conclude that the evidence does not preponderate against the trial court's finding that neither Reid Jones nor Mrs. Jones had the apparent or ostensible authority to accept service of the garnishment on behalf of ANPAC.

-15-

Finally, Garnishor argues that ANPAC, through the conduct of its agent, Reid Jones, as well as Reid Jones individually, should be held liable for their intentional and/or grossly negligent conduct in the manner in which the garnishment was handled. Garnishor cites to the statutory scheme of the garnishment procedures and Tennessee Rule of Civil Procedure 69 in asserting that a garnishee must answer the garnishment within ten days of service, and that the answer must include information regarding (1) whether the garnishee has or had in its possession any of Debtor's property, and (2) "[w]hether there are, to such garnishee's knowledge and belief, any and what property, debts, and effects in the possession or under the control of any other, and what, person . . . ." T.C.A. § 26-2-204 (2000); *see* Tenn. R. Civ. P. 69.05. Garnishor claims that the garnishment statutes impose strict liability on a garnishee for failure to timely file an answer and to timely pay funds or property of the debtor into court. Based on this premise, Garnishor argues that ANPAC, through the acts of Reid Jones, as well as Reid Jones individually, acted intentionally and/or in a grossly negligent manner in failing to timely answer the garnishment, failing to read the garnishment when it was served, giving the garnishment to Debtor and not following up with Debtor to see that it was "taken care of," failing to file a timely and complete answer to the conditional judgment, and failing to acknowledge property owned by Debtor in their possession and surrendering such property in accordance with the garnishment laws. This dilatory conduct, Garnishor argues, prejudiced Garnishor, because in the interim, Debtor filed a petition for bankruptcy, thus precluding further recourse against Debtor and effectively preventing Garnishor from proceeding with any further garnishment. Therefore, it argues, both ANPAC and Reid Jones should be held liable to Garnishor to some extent, and the case should be remanded for a determination of damages.[9]

Garnishor's argument that ANPAC should be held liable because of the alleged misconduct of Reid Jones presupposes that Reid Jones was ANPAC's agent for the purpose of accepting service of the garnishment. As discussed above, Mr. Jones was not ANPAC's agent for this purpose.

Moreover, the cases on which Garnishor relies involve garnishees who were properly served with the garnishment. We have concluded that proper service of the garnishment on ANPAC was not accomplished. The garnishor acquires no rights against the garnishee, here ANPAC, until and unless the garnishment is properly served. "The garnishee is bound only from the

---

[9]Garnishor claims that, if the conduct of ANPAC and Reid Jones is found to be intentional or grossly negligent, they should be found liable for the full amount of Garnishor's unpaid judgment. If their conduct is found to be negligent, Garnishor claims, a final judgment should have been entered for the funds and property held by ANPAC and Reid Jones, plus interest.

time of the service of the writ." 38 C.J.S. *Garnishment* § 214. Garnishor cites no authority for holding a garnishee liable for any intentional or grossly negligent conduct in answering the garnishment in the absence of proper service of the garnishment, and we have found none. For these reasons, we reject Garnishor's argument that ANPAC is liable for any intentional/grossly negligent/negligently dilatory conduct in the manner in which Reid Jones or his employees dealt with the garnishment.

As to Reid Jones individually, Garnishor argues that Debtor owned office furniture and other furnishings at the Agency located at the White Station Road location, and that this property was subject to garnishment. The Reid Jones Insurance Agency's answer to the garnishment, however, stated that it had no property belonging to Debtor. Therefore, Garnishor asserts, the failure of the Reid Jones Insurance Agency's answer "to include information known to Reid Jones concerning the possession of the Debtor's assets by ANPAC was a further apparently intentional non-disclosure" that supports Garnishor's claim for damages against Mr. Reid Jones individually.

This might be a viable argument if either Reid Jones or the Agency were the named garnishee. They were not. The garnishment in question was not issued to Mr. Reid Jones or to the Reid Jones Insurance Agency; it was issued to ANPAC at the Agency's address. Garnishor has cited no authority that would hold a third party liable with respect to a garnishment that was improvidently served on the third party, and we have found none. Therefore, we find no basis for liability against Reid Jones or the Reid Jones Insurance Agency resulting from its actions in answering the garnishment.

All other issues raised on appeal and not specifically addressed are pretermitted by our holdings herein.

### CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellant Dexter Ridge Shopping Center, LLC, and its surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE