IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 18, 2012 Session

**ROBBIE BUTLER THOMAS**
v.
**D.W. POINTER, INDIVIDUALLY AND D/B/A POINTER INSURANCE AGENCY, INC., AND MARKET FINDERS INSURANCE CORPORATION**

**Appeal from the Circuit Court of Shelby County**
**No. CT-00389705   James F. Russell, Judge**

**No. W2011-01595-COA-R3-CV - Filed June 29, 2012**

This appeal arises from the cancellation of a homeowner's insurance policy. The plaintiff homeowner asked the defendant insurance agent to obtain a homeowner's insurance policy for a home that was not her residence.  The agent contacted the defendant intermediary insurance agency, and an insurance policy was issued.  The homeowner paid the insurance premiums to the insurance agent, who failed to pay them to the intermediary insurance agency.  The policy was cancelled for nonpayment.  The cancellation notice was sent to the insurance agent and to the insured address, but not to the residential address of the homeowner.  A fire occurred and the homeowner's claim was not paid.  The homeowner sued the intermediary insurance agency.  The trial court granted summary judgment in favor of the defendant intermediary insurance agency.  The homeowner appeals.  We reverse in part, holding that the intermediary insurance agency did not negate the homeowner's claim based on the apparent authority of the insurance agent.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed in Part, Affirmed in Part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Archie Sanders, III, Memphis, Tennessee for Plaintiff/Appellant Robbie Butler Thomas

W. Timothy Hayes, Jr. and Kimberly Cross Shields, Memphis, Tennessee for Defendant/Appellee Market Finders Insurance Corporation

# OPINION

## FACTS AND PROCEEDINGS BELOW

As this appeal involves a grant of summary judgment, we recite the facts from the complaint, from documents attached to the complaint, and from documents filed in connection with the summary judgment motion.

Plaintiff/Appellant Robbie Butler Thomas ("Thomas"), was a Missouri resident. Defendant D.W. Pointer, d/b/a Pointer Insurance Agency, Inc., ("Pointer") was an insurance agent in Shelby County, Tennessee. Pointer had worked with Thomas's family for over thirty years, and Thomas's family had always paid the premiums for their insurance through Pointer. In May 2003, Thomas contacted Pointer to obtain a homeowner's insurance policy on a house she owned in Memphis, Tennessee. Thomas did not reside in the Memphis home for which she sought insurance.

To obtain insurance for Thomas, Pointer contacted an intermediary broker, Defendant/Appellee Market Finders Insurance Corporation ("Market Finders"). Market Finders obtained a homeowner's insurance policy for Thomas's Memphis house through insurance carrier Lloyd's of London ("Lloyd's").

On approximately May 2, 2003, Thomas gave Pointer a check for the insurance premium in the amount of $550.[1] Thomas understood that the premium payment would be sent to Market Finders for the policy. Subsequently, Market Finders told Pointer that an additional $44 premium payment was due on the policy. On May 31, 2003, Thomas received a letter from Pointer at her Missouri residence, requesting the additional $44 payment. The next day, Thomas mailed Pointer a $44 check, made payable to Pointer. Thomas received an insurance policy with Lloyd's as the underwriter and Market Finders as the agent, with effective dates of May 16, 2003 to May 16, 2004.

Pointer had until June 15, 2003 to remit the insurance premium payment to Market Finders on Thomas's behalf. Market Finders never received the premium payment.

On June 15, 2003, Market Finders sent a notice of cancellation of the insurance policy on Thomas's Memphis home for nonpayment of premiums, listing June 30, 2003 as the date of cancellation for the policy. The cancellation notice was sent to the insured address in Memphis, to Pointer, and to Thomas's mortgage company. The cancellation notice was not sent to Thomas's residence in Missouri, and Thomas was unaware of it. A second

---

[1]The record does not indicate to whom the check was made payable.

cancellation notice was sent, giving Pointer an additional month to pay; it was sent to the same addresses. Finally, on July 30, 2003, Market Finders cancelled the policy for nonpayment.

On January 10, 2004, Thomas's Memphis house caught fire. The damage was substantial. After the fire, Thomas sent a property loss notice to Market Finders via Pointer's Insurance. She then learned that the premium payment she gave to Pointer was never received by Market Finders and that her insurance policy had been cancelled for nonpayment. Thomas's fire claim was not paid.

On July 21, 2005, Thomas filed the instant lawsuit in the Circuit Court of Shelby County, Tennessee, against Market Finders and Pointer.[2] Thomas alleged several claims against both Pointer and Market Finders. Thomas's claims included fraudulent misrepresentation, fraudulent suppression, breach of contract, negligent supervision and hiring, conspiracy to defraud, and conversion. The complaint alleged that Pointer acted within the "actual, implied, and apparent scope of his authority as an agent" for Market Finders and "was acting as an agent employee representative of [Market Finders] . . . in dealing with [Thomas]." It alleged that Pointer and Market Finders maliciously and intentionally "entered into a pattern or practice of fraudulent conduct" and that Market Finders knew or should have known of Pointer's conduct. The complaint sought both compensatory and punitive damages.

Pointer was served with Thomas's lawsuit. However, he died after the lawsuit was commenced.[3]

Discovery ensued. In the course of discovery, Market Finders took Thomas's deposition. Thomas testified in her deposition that her family, especially her father, had had a relationship with Pointer for over thirty years. From her family's dealings with Pointer, Thomas was under the impression that Pointer worked for Market Finders; Thomas said that was what Pointer told them. In addition, Thomas said, the insurance policy that was issued led her to believe that Pointer worked for Market Finders.

Also during discovery, Thomas's counsel took the deposition of Market Finders president James Ryan. Ryan testified that Market Finders had been doing business with Pointer since 2001. He described Pointer as "a producer for [Market Finders]; not an a– he was an insurance agent, but not an agent of ours." Market Finders' agreement with Pointer said that Pointer could not bind Market Finders and that Pointer was responsible for the premium

---

[2]Apparently Pointer did not have errors and omissions insurance.

[3]The record does not contain a suggestion of death for Pointer, but this fact is undisputed.

payment on insurance business he ordered through Market Finders. Under the general procedure, once a customer made a decision to purchase an insurance policy, Market Finders would send a statement to Pointer for the premium. Each month, Market Finders billed Pointer for all of the policies he had ordered from Market Finders that month. The insured would pay the insurance premium to Pointer, Pointer would then pay Market Finders, and Market Finders would in turn pay the insurance carrier, here, Lloyd's. Ryan emphasized that Market Finders did not deal with the customer directly. Ryan testified that he had "no idea what [Pointer] told the insured" and that "it's hard to determine what . . . any agent tells his insured" about the insurance agent's relationship with Market Finders.

Ryan testified in his deposition that, in Thomas's case, Thomas dealt with Pointer and Pointer in turn dealt with Market Finders. In May 2003, Pointer ordered several insurance policies from Market Finders, including Thomas's policy; Ryan indicated that all of these policies were eventually cancelled for nonpayment of the premium. Ryan testified that Thomas's cancellation notice was sent to Pointer, to the mortgage company, and to Thomas at the address of the home that was insured. If Thomas needed the notices sent to another address, Ryan said, Pointer was responsible for putting a different mailing address for Thomas on the policy.

In August 2010, Market Finders filed a motion for summary judgment. A hearing on the motion was held on June 3, 2011.

On June 10, 2011, the trial court entered an order granting summary judgment in favor of Market Finders. It found that Market Finders' cancellation of Thomas's insurance policy was appropriate because Market Finders had complied with the policy provisions regarding cancellation for nonpayment. On the issue of notice, the trial court found that Thomas and "her agent, Mr. D.W. Pointer, received proper notice of the cancellation. . . ." It also held that cancellation of the policy "was noticed to [Thomas] in the correct manner," observing that the cancellation clause in the policy provided for notice to be sent to the insured address shown on the policy, and that is what Market Finders did. The trial court stated:

> The court further finds that Mr. Pointer was not an agent or employee of [Market Finders] under the facts of this matter and said argument is not well taken. The court therefore holds that [Market Finders] is not liable to [Thomas] based upon a theory of *respondeat superior*.

-4-

For reasons that are not entirely clear in the record, the trial court's order was made final under Rule 54.02 of the Tennessee Rules of Civil Procedure.[4]  Thomas now appeals.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Thomas argues that the trial court erred in granting Market Finders' motion for summary judgment because disputed issues of material fact exist as to whether Pointer had apparent authority to act as Market Finders' agent.

Market Finders contends that the issues on appeal are: (1) whether the trial court erred in finding that Market Finders complied with the rules and regulations promulgated by the Tennessee Department of Insurance and the policy provisions regarding cancellation of the policy for nonpayment of premium; and 2) whether the trial court erred in finding that Pointer was not an agent or employee of Market Finders under the facts of this case and that Market Finders was not liable to Thomas based on a theory of *respondeat superior*.

A grant of summary judgment is reviewable on appeal as a question of law, *de novo* with no presumption of the correctness of the trial court's decision.  *Boren ex rel. Boren v. Weeks*, 251 S.W.3d 426, 432 (Tenn. 2008).  This Court must  review the record and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied.  *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 363 (Tenn. 2009).

Summary judgment should be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).  "The party seeking the summary judgment has the ultimate burden of persuasion 'that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law.'" *Giggers*, 277 S.W.3d at 363 (quoting *Byrd,* 847 S.W.2d at 215).  If the motion for summary judgment is properly supported, "the burden to establish a genuine issue of material fact shifts to the non-moving party." *Giggers*, 277 S.W.3d at 363.  "In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim

---

[4]While the trial court did not explicitly reference Rule 54.02 in its order, it used the "no just reason for delay" and "expressly direct[s]" language of Rule 54.02.  Although it is undisputed that Pointer died while the case was pending, the appellate record does not include orders or pleadings dismissing or otherwise resolving Thomas's claims against Pointer.  Thus, the trial court may have made its order final and appealable under Rule 54.02 because Thomas's claims against Pointer remain unresolved.

or demonstrate that the nonmoving party cannot establish an essential element of his case."[5] *Giggers*, 277 S.W.3d at 363; *Hannan v. Altell Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008); *Byrd,* 847 S.W.2d at 215 n.5. Under *Hannan*, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." *Hannan*, 270 S.W.3d at 8. Instead, the moving party must "either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense." *Id.* (quoting *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000)).

In addition, "courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party." *Giggers*, 277 S.W.3d at 364 (citing *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997)). "A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion." *Giggers*, 277 S.W.3d at 364 (citing *Staples*, 15 S.W.3d at 89).

### ANALYSIS

### Procedural Posture of Case

For reasons that are not explicit, the trial court's order granting summary judgment in favor of Market Finders was apparently made final under Rule 54.02 of the Tennessee Rules of Civil Procedure. We note that the trial court's explanation of its reasoning and findings did not expressly address the legal theory Thomas raises on appeal, namely, that Pointer had apparent authority to act as Marker Finders' agent, and thus, Market Finders should be held legally responsible for his actions. However, the trial court's order dismissed with prejudice all of Thomas's claims against Market Finders. Therefore, we assume that the trial court's grant of summary judgment included Thomas's claims based on apparent authority. We proceed with our analysis of the issues with that understanding.

### Summary Judgment Standard

In its motion for summary judgment below, Market Finders repeatedly asserted that the trial court should utilize the summary judgment set forth in *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Specifically, Market Finders argued repeatedly that, under the summary judgment standard to be employed, "it is not up

---

[5]This case was filed prior to July 1, 2011. Therefore, the *Hannan* standard applies. *See Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 25 n.2 (Tenn. 2011).

to the defendant to disprove the plaintiff's issue, but rather the plaintiff must make a *prima facie* showing on such issue." Market Finders quotes *Byrd's* holding that, after discovery, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Byrd*, 847 S.W.2d at 213 (quoting *Celotex*, 477 U.S. at 322-23). Market Finders repeats this in its appellate brief to this Court: "In *Celotex*, the Supreme Court stated that with respect to any issue in which the plaintiff bears the burden of proof, it is not up to the defendant to disprove the plaintiff's issue, but rather the plaintiff must make a *prima facie* showing on such issue . . . . Otherwise, summary judgment should be granted in favor of the moving party."

Market Finders' description of the applicable summary judgment standard may have been correct years ago, but it is wrong now. As noted above, under the applicable standard in *Hannan v. Altell Publishing*, it *is* in fact *"*up to the defendant [moving party] to disprove the plaintiff's issue." The *Hannan* Court expressly rejected the "put up or shut up" standard described by Market Finders as the current summary judgment standard. *Hannan*, 270 S.W.3d at 8. Therefore, to obtain a grant of summary judgment, Market Finders was required to "affirmatively negate an essential element of [Thomas's] claim or show that [Thomas] cannot prove an essential element of the claim at trial." *Id.* at 8-9. In essence, Market Finders was required to *"*prove a negative." *Moore v. Butler*, No. W2010-02374-COA-R3-CV, 2011WL 6004010, at *6; 2011 Tenn. App. LEXIS 648, at *16 (Tenn. Ct. App. Dec. 1, 2011).

Accordingly, we consider the issues raised on appeal under *Hannan* and its progeny.

### Apparent Authority

On appeal, Thomas argues that summary judgment was inappropriate on the claim that Pointer had apparent or ostensible authority to act as Market Finders' agent and thus that Market Finders should be held legally responsible for Pointer's actions on Market Finders' behalf.[6] Thomas contends that her understanding, that Pointer was acting as Market Finders' agent, was based on acts by Pointer of which Market Finders was aware. For example, Thomas contends that Market Finders was aware that Pointer was collecting premiums on Market Finders' behalf and that Pointer provided Thomas a Market Finders insurance policy

---

[6]Tennessee courts have used the terms "apparent authority" and "ostensible authority" interchangeably. *See BellSouth Adver. & Publ'g Corp. v. Primary Residential Mortg., Inc.,* No. M2007-00200-COA-R3-CV, 2008 WL 624846, at *3-4; 2008 Tenn. App. LEXIS 281, at *9-10 (Tenn. Ct. App. Mar. 7, 2008)(quoting *Edmond Brothers Supply Co., Inc. v. Boyle* , 44 S.W.3d. 530, 534 (Tenn. Ct. App. 2000)).

after accepting premium payments from Thomas. In her deposition, Thomas said that her understanding that Pointer was Market Finders' agent was also based on the insurance policy itself. If Market Finders acquiesced in Pointer's apparent exercise of authority, Thomas argues, Market Finders is then responsible for Pointer's failure to ensure that Thomas received the cancellation notice. Thomas points out that Pointer knew Thomas's correct mailing address and how to contact her but failed to put her correct address on the policy or contact her after receiving the cancellation notice. Because Market Finders acquiesced in Pointer's exercise of apparent authority, Thomas argues, Pointer's acts should be imputed to Market Finders.

In response, Market Finders argues that Pointer was an independent contractor, an independent insurance agent who had served as the insurance agent for Thomas's family for many years. Market Finders points to its agreement with Pointer, which explicitly states that Pointer was an independent contractor and not an agent of Market Finders.

Market Finders' argument is not responsive to the issue raised by Thomas on appeal. To explain, we must first briefly examine some basic concepts on the law of agency:

> [T]he common law of agency "attributes the legal consequences of one person's action to another person." Restatement (Third) of Agency ch. 2 Introductory Note (2006).
>
> * * *
>
> Two bases under which the common law attributes the legal consequences of the agent's actions to the principal are actual authority and apparent authority. Restatement (Third) of Agency ch. 2 Introductory Note (2006).

***Barbee v. Kindred Healthcare Operating, Inc.***, No. W2007-00517-COA-R3-CV, 2008 WL 4615858, at *6; 2008 Tenn. App. LEXIS 630, at *15-17 (Tenn. Ct. App. Oct. 20, 2008). Apparent authority is "the power held by the putative agent 'to affect a principal's legal relations with third parties when a third party reasonably believes the [putative agent] has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.' " ***Barbee***, 2008 WL 4615858, at *6; 2008 Tenn. App. LEXIS 630, at *17 (quoting Restatement (Third) of Agency § 2.03). "Apparent authority is created 'where a person by words or conduct represents or permits it to be represented that another person is his or her agent, when no actual agency exists.' " ***Dexter Ridge Shopping Ctr., LLC v. Little***, 358 S.W.3d 597, 609 (Tenn. Ct. App. 2010) (quoting ***Raspberry v. Campbell***, No. W2006-01668-COA-R3-CV, 2007 WL 2471512, at *3; 2007 Tenn. App. LEXIS 564, at *9 (Tenn. Ct. App. Aug. 31, 2007)). "Apparent authority rests on principles of estoppel. If a principal has [clothed] an agent with apparent authority to act on behalf of the principal, then the principal is estopped from denying liability for the acts of the agent when the agent exercises

that authority." **Dexter Ridge**, 358 S.W.3d at 609. This Court has discussed the distinction between apparent authority versus actual or "real" authority:

> An agent has power to make contracts which will bind his principal not only when actually authorized to do so by express words or inference of fact, but also in cases where the principal did not intend to confer such authority on the agent but, nevertheless, held out to the public or to the person with whom the agent dealt an appearance of authority.
>
> Apparent authority, or ostensible authority, as it is also termed, is that which, though not actually granted, the principal permits the agent to exercise, or which he holds him out as possessing.
>
> Describing the distinction between actual or "real" authority, either express or implied, on the one hand, and apparent authority on the other, one court said:
>
> > We recognize the distinction between real and apparent authority. Real authority exists when the agent is expressly authorized by the principal to act or when the actual authority to act can be implied from the facts. In contrast, apparent authority arises when the principal, through words or conduct, leads a third person to the reasonable belief that the agent is authorized to act when, in fact, he is not.

**Love v. Woods**, No. E2009-02385-COA-R3-CV, 2010 WL 4366072, at *6; 2010 Tenn. App. LEXIS 690, at *17-19 (Tenn. Ct. App. Nov. 4, 2010) (quoting 12 Samuel Williston, Treatise on the Law of Contracts § 35:11 (Richard A. Lord ed., 4th ed. 2010)).

Thus, Market Finders' assertion that Pointer did not have actual authority to act for Market Finders and its reliance on the contract between Pointer and Market Finders begs the question. Apparent authority becomes an issue only in the *absence* of actual authority.

Hearkening back to the standard for summary judgment, we find nothing in the record indicating that Market Finders negated an element of Thomas's claim based on Pointer's apparent authority. To do so, Market Finders would have to essentially "prove a negative," that is, prove that Market Finders did not knowingly permit Pointer to hold himself out as Market Finders' agent or clothe Pointer with the appearance of authority. **Moore**, 2011 WL 6004010, at *6; **Barbee**, 2008 WL 4615858, at *6-7. This they have not done.

### *Market Finders' Issues*

As noted above, Market Finders does not directly refute Thomas's argument on the only issue Thomas raises on appeal, its claim based on apparent authority. Market Finders does, however, set out two issues of its own:

> (I)     That Market Finders Insurance Corporation complied with the rules and regulations promulgated by the Tennessee Department of Insurance and the policy provisions regarding cancellation of the policy for non-payment of the premium and, therefore, the plaintiff has no cause of action against Market Finders Insurance Corporation.
>
> (II)    That Mr. Pointer was not an agent or employee of Market Finders Insurance Corporation under the facts of this matter and Market Finders Insurance Corporation is not liable to the plaintiff based upon a theory of *respondeat superior*.

We confess to being somewhat perplexed. The trial court ruled that: Market Finders properly cancelled Thomas's insurance policy, Pointer was not an actual agent of Market Finders, and Market Finders was not liable based on *respondeat superior*. Thomas did not appeal these rulings, and the rulings were in Market Finders' favor, so we presume that Market Finders does not actually intend to appeal these rulings. Although this is not expressly stated by Market Finders, we gather that Market Finders' intent is to contend that, even if Pointer had apparent authority to act on behalf of Market Finders, it is nevertheless entitled to summary judgment on these bases. With this understanding, we address each issue in turn.

### *Respondeat Superior*

Market Finders argues that even if Pointer had apparent authority to act on Market Finders' behalf, Pointer's actions would have been outside the scope of Pointer's employment. Market Finders contends that it would not be liable for deviations from the scope of Pointer's employment under a theory of *respondeat superior*. Market Finders maintains that the trial court properly found that it was not liable under *respondeat superior* because Thomas "failed to allege that she suffered any injuries as a result of a policy or custom and had further failed to meet the threshold requirements" for *respondeat superior* claim under applicable case law.

Contrary to Market Finders' assertion, the trial court's conclusion that Market Finders was not liable under *respondeat superior* was not based on Thomas's failure to allege an injury as a result of a policy or custom. Rather, the trial court first found Pointer was not an agent

of Market Finders, and this was the basis for its conclusion that Market Finders was not liable under the doctrine of *respondeat superior*.

Market Finders is attempting to argue that the conduct by Pointer that resulted in damage to Thomas was not within the scope of Pointer's apparent authority. This conclusory assertion does not negate Thomas's claim that Pointer was acting with apparent authority for Market Finders. This argument is without merit.

### *Rules and Regulations*

Market Finders argues that it complied with the rules and regulations promulgated by the Tennessee Department of Insurance and the policy provisions regarding cancellation of Thomas's insurance policy. Specifically, Market Finders contends that it complied with the policy provisions concerning the cancellation of the policy when it mailed the notification to the insured address written on the policy and argues that Thomas took no steps to correct the mailing address on the policy. Market Finders asserts that the trial court properly granted summary judgment based on its finding that Thomas and Pointer were properly notified of the cancellation.

This argument is likewise unpersuasive. Under the legal theory of apparent authority, Thomas contends that, because Market Finders acquiesced in Pointer's exercise of apparent authority, Market Finders should be held legally responsible for Pointer's acts and omissions. If Pointer acted with the apparent authority of Market Finders, then Thomas was justified in believing that Pointer accepted her premium payments on Market Finders' behalf. ***See, e.g., Aetna Life Ins. Co. v. Fallow***, 77 S.W. 937, 940 (Tenn. 1903) ("[A]n agent of an insurance company, having [apparent] general authority to solicit applications and make contracts for insurance, and to receive first premiums, binds his principal by any acts or contracts within the general scope of his apparent authority, notwithstanding an actual excess of authority."). Thomas also contends that Pointer acted with the apparent authority of Market Finders in filling out the information on the insurance policy, including Thomas's mailing address, where Pointer had actual knowledge that Thomas did not live in the house that was the subject of the insurance policy. Thomas's claim under apparent authority appears to include Pointer's actions in retaining Thomas's premium payments without forwarding them to Market Finders and in failing to notify Thomas of the looming cancellation, in view of the fact that Pointer knew that Thomas's residential address was not the mailing address listed on the insurance policy.

Under these circumstances, Market Finders has not negated Thomas's claims based on Pointer's apparent authority merely by arguing that it complied with policy provisions and

-11-

insurance regulations.[7]  Thus, Market Finders has not met its burden to obtain summary judgment on Thomas's claims based on Pointer's apparent authority.

## CONCLUSION

Thomas has not appealed the trial court's holding that Pointer did not have actual authority to act for Market Finders and that Market Finders complied with the provisions of Thomas's insurance policy regarding the cancellation notice, so we do not address the substance of these holdings on appeal.  We reverse the trial court's decision insofar as it granted summary judgment to Market Finders on Thomas's claims based on Pointer's apparent authority.

The decision of the trial court is reversed in part and affirmed in part, as set forth above, and the cause is remanded for further proceedings consistent with this opinion.  Costs on appeal are taxed to the Appellee Market Finders Insurance Corporation, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[7]The trial court found that Market Finders complied with the policy provisions with respect to the cancellation of Thomas's insurance coverage, but did not mention insurance regulations in its order.