IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 7, 2023 Session

## PHILIPS NORTH AMERICA, LLC v. KPI HEALTHCARE, INC. ET AL.

**Appeal from the Circuit Court for Williamson County**
**No. 2022-CV-60     Joseph A. Woodruff, Judge**

————————————————————————

**No. M2022-01688-COA-R3-CV**

————————————————————————

To collect on its judgment, Appellant judgment creditor served a levy on Appellee garnishee bank. Judgment creditor sought to garnish an escrow account that was subject to an escrow agreement between a third-party and judgment debtor's representative. Garnishee bank initially responded that it did not have any funds to remit. Thereafter, garnishee bank filed an amended response and enclosed a cashier's check for $731,598.51, the amount of funds in the escrow account; the check was made payable to the Williamson County Circuit Court. A few days later, garnishee bank filed a motion to return funds deposited into the Clerk's Office. At trial, garnishee bank argued that it was not properly served with the levy and that, even if service was proper, judgment creditor had no right to collect the funds held in the escrow account. The trial court agreed. We conclude that garnishee bank waived any objection concerning whether the levy was properly served. The trial court's order is otherwise affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed in Part; Affirmed in Part; and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Tara L. Swafford and Elizabeth G. Hart, Franklin, Tennessee, Carla M. Wirtschafter, Los Angeles, California, and M. Patrick Yingling, Chicago, Illinois, for the appellant, Philips North America, LLC.

Kathryn Skagerberg and Woods Drinkwater, Nashville, Tennessee, and Jeffrey A. Greene, Franklin, Tennessee, for the appellee, Capstar Bank.[1]

---

[1] KPI Healthcare, Inc. and KPI Healthcare eCommerce, Inc. a/k/a O2 Lifecare, Inc. are not parties to this appeal.

# OPINION

## I. Background

In September 2021, a California court awarded Appellant Philips North America, LLC ("Philips") a $37,593,949.95 judgment against KPI Healthcare, Inc. ("KPI") and KPI Healthcare eCommerce, Inc. a/k/a O2 Lifecare, Inc. During that litigation, KPI's CEO, President, and Owner, Steven Minn, sold KPI's assets and left the United States. Philips alleges that some of these assets were sold to Diagnostx, LLC ("Diagnostx") and that the payment for such assets was deposited into an escrow account held at Appellee Capstar Bank ("Capstar") in Tennessee, discussed further below. On June 24, 2022, Philips obtained a writ of execution from the Williamson County Circuit Court ("trial court") directed to Capstar. The only judgment debtor identified on the bank levy (the "Levy") was "KPI Healthcare, Inc.," *i.e.,* KPI. The only account number listed on the Levy was "[xxxxxx]4054 (Diagnostx LLC)" (the "Account").

Concerning the Account, it was titled "Diagnostx LLC" and was an "Escrow Services Money Market" account. Capstar, as the escrow agent, possessed an escrow agreement (the "Escrow Agreement"), which was entered on July 8, 2020 between Diagnostx and Mr. Minn, in his capacity as the "Seller Representative." Under the agreement, KPI and KPI's stockholders were the "Sellers." Relevant here, under paragraph 1.2 of the Escrow Agreement, Diagnostx remitted $1,000,000.00 to Capstar to be deposited into the Account. Paragraph 4.10 of the Escrow Agreement provided that it terminated on July 8, 2022. The agreement further provided that, "[u]pon the Escrow Release Date, the Escrow Agent [(Capstar)] is authorized and directed to disburse all of the remaining funds and property held . . . in accordance with the joint written instructions of [Diagnostx and KPI]."

On July 1, 2022, the Levy was delivered and receipt was acknowledged by Cathy Walker, a front desk receptionist at Capstar. Ms. Walker was not the authorized registered agent for Capstar; Timothy K. Schools, CEO of Capstar, was the registered agent for service of process on the bank.

On August 2, 2022, Capstar received joint written instructions to disburse the remaining $731,573.51 held in the Account to a Bank of America account where KPI was the beneficiary. The funds were transferred and the Account was closed.

On August 9, 2022, Philips sent a demand letter to Capstar concerning Capstar's failure to provide a response to the July 1, 2022 Levy. On August 18, 2022, Capstar responded to Philips' demand letter by stating that the bank did not have any funds to remit. On September 1, 2022, Capstar received a subpoena demanding production of statements and canceled checks on the Account. On October 3, 2022, Capstar sent an amended response to the trial court enclosing a cashier's check for $731,598.51 paid to the

Williamson County Circuit Court.[2]

On October 20, 2022, Capstar filed a motion to return funds deposited into the Clerk's Office. Capstar also filed a motion for temporary restraining order to prevent the disbursement of those funds to Philips. That same day, the trial court entered an order staying all matters in the case pending a hearing on Capstar's motion to return funds. On October 31, 2022, Philips filed its response in opposition to the motion to return funds and temporary restraining order.

On November 3, 2022, the trial court heard Capstar's motion and granted it by order of November 17, 2022. Specifically, the trial court held that: (1) Capstar was not properly served with the Levy; (2) Philips had no right to the funds held by the Clerk's Office; (3) Diagnostx was not a judgment debtor in the underlying civil action giving rise to the judgment; and (4) even if Capstar was properly served, the Levy was insufficient to create any obligation to Capstar to attach funds not belonging to KPI. Philips filed a timely appeal.

## II. Issues

Philips raises four issues for this Court's review, as stated in its brief:

1. Whether Capstar Bank failed to meet its burden under Tennessee Rule of Civil Procedure 60.

2. Whether Capstar Bank waived its objections to the Levy by answering the Levy twice without asserting its objections.

3. Whether Philips properly served Capstar Bank with the Levy.

4. Whether Philips' Levy identified a judgment debtor (KPI) that was the beneficiary of an account at Capstar Bank.

## III. Standard of Review

We review a non-jury case "*de novo* upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise." ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000) (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed *de novo* and "are accorded no presumption of correctness." ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. 2008).

_____

[2] It is unclear why there was a $25.00 discrepancy between the amount Capstar paid into the clerk's office and the amount Capstar disbursed to the Bank of America account.

## IV.  Analysis

### A.  Capstar's Use of Tennessee Rule of Civil Procedure Rule 60

As discussed, *supra*, on October 20, 2022, Capstar filed a motion to return the $731,598.51 it deposited into the Clerk's Office.  In this motion, Capstar relied on Rule 60 of the Tennessee Rules of Civil Procedure as authority for its request.  On appeal, Philips argues that this Court should reverse the trial court's order returning the funds because Capstar failed to meet its burden under Rule 60.  Rule 60 is a vehicle that litigants may use to correct mistakes in *judgments* or *orders*.  *See* Tenn. R. Civ. P. 60.01, 60.02.  When Capstar filed the motion to return funds, the trial court had not yet entered an order or judgment in the case.  Accordingly, Rule 60 was inapplicable.  However, Capstar's incorrect use of Rule 60 did not bar it from the relief it sought.

It is well-settled that trial courts should "give effect to the substance of pleadings and motions rather than to their terminology or form." *Anderson v. DTB Corp.*, No. 89-172-II, 1990 WL 33380, at *2 (Tenn. Ct. App. Mar. 28, 1990).  Indeed, the Tennessee Rules of Civil Procedure provide that "[n]o technical forms of pleadings or motions are required," Tenn. R. Civ. P. 8.05, and that all pleadings shall be construed "to do substantial justice."  Tenn. R. Civ. P. 8.06.  Accordingly, "[a] trial court 'has the discretion to treat the pleading according to the relief sought.'" *Norton v. Everhart*, 895 S.W.2d 317, 319 (Tenn. 1995) (citing *Fallin v. Knox County Board of Commissioners*, 656 S.W.2d 338, 342 (Tenn. 1983); *State v. Minimum Salary Dep't. of A.M.E. Church*, 477 S.W.2d 11, 12 (Tenn. 1972)).

Turning to the motion to return funds, Capstar argued, *inter alia*, that: (1) it was not properly served with the Levy; and (2) it had no obligation to attach funds not belonging to KPI, the judgment debtor.  For these reasons, Capstar asked the trial court to return the funds deposited into the Clerk's Office to Capstar.  As discussed, *supra*, in its order, the trial court found that: (1) Capstar was not properly served with the Levy; (2) Philips had no right to the money being held in the Clerk's Office; (3) Diagnostx was not a judgment debtor in the underlying civil action giving rise to the judgment; and (4) even if Capstar was properly served, the Levy was insufficient to create any obligation to Capstar to attach funds not belonging to KPI.  Thus, the trial court properly treated the motion to return funds according to the relief sought rather than analyzing it under Rule 60.  Accordingly, Philips' first issue is without merit.

### B.  Capstar Waived Objections to Service of the Levy

Philips next argues that Capstar waived any objections to the service of the Levy and, consequently, was properly served with same.  As discussed above, despite Mr. Schools being the registered agent for service of process on the bank, Ms. Walker, a front desk receptionist, acknowledged receipt of the Levy on July 1, 2022.  In its final order, the

trial court found that "service made on a clerical employee of the subject garnishee business entity [,*i.e.,* Ms. Walker,] is not an accepted substitute for service of process on the business entity's registered agent [, *i.e.,* Mr. Schools]." Accordingly, the trial court found that Capstar was not properly served with the Levy. Despite noting Philips' argument that Capstar waived any objections to service of the Levy, the trial court did not address the merits of this argument.

Our courts have repeatedly held "that the appearance and answer of a garnishee waives any objection that might have been taken to the notice." ***Miller, Stewart & Co. v. O'Bannon***, 72 Tenn. 398, 403 (Tenn. 1880) (citing ***Moody v. Alter, Winston & Co.***, 59 Tenn. 142, 146 (Tenn. 1873); ***Hearn v. Crutcher***, 12 Tenn. 461, 475 (Tenn. 1833)); *see also* ***Gen. Truck Sales, Inc. v. Simmons***, 343 S.W.2d 884, 887 (Tenn. 1961); ***Stonecipher v. Knoxville Sav. & Loan Ass'n***, 298 S.W.2d 785, 788 (Tenn. Ct. App. 1956). We recall that, on August 18, 2022, Capstar responded to Philips' demand letter by stating that the bank did not have any funds to remit. On October 3, 2022, Capstar sent an amended response and a cashier's check for $731,598.51 paid to the Williamson County Circuit Court. Accordingly, Capstar made its first appearance and provided an answer on August 18, 2022 and provided an amended answer on October 3, 2022. On this Court's review, Capstar did not allege improper service or raise any objections in either of these responses. Indeed, Capstar first argued that it was not properly served with the Levy in its October 20, 2022 motion to return funds.[3] At that point, Capstar had already appeared and answered the Levy, waiving any objection it may have had to service of same. *See* ***Stonecipher***, 298 S.W.2d at 788 ("[T]he rule is well settled that where [a] garnishee voluntarily appears and answers, he waives all defects in the garnishment summons, or in its service on him."). Accordingly, we conclude that the trial court erred in holding that Capstar was not properly served with the Levy.

### C. Philips Not Entitled to Funds Held in Capstar Account

Capstar's waiver of service did not, *ipso facto*, entitle Philips to the escrow funds in the Account. A brief discussion of the law concerning garnishments is helpful before proceeding with our analysis. A "[g]arnishment is a proceeding whereby the plaintiff seeks to subject to his claim property of the defendant in the hands of a third person . . . ." ***Stonecipher***, 298 S.W.2d at 789-90. This Court has explained that "[g]arnishment is in the nature of an attachment of a debt due the judgment debtor from the garnishee; and, service of the garnishment upon the garnishee is a warning to the garnishee not to pay the debt due but to answer the garnishment and hold the fund subject to the orders of the Court." ***Dexter Ridge Shopping Ctr., LLC v. Little***, 358 S.W.3d 597, 605 (Tenn. Ct. App. 2010) (citing

---

[3] That same day, Capstar filed Amy Goodin's affidavit, which also stated, in pertinent part, that Ms. Walker was not the registered agent for the bank and was not granted authority to accept service on behalf of the bank. In the affidavit, Ms. Goodin represented that she was the Chief Risk Officer for Capstar and had "operational oversight of the [b]ank, including account records and knowledge of individuals authorized to accept service on behalf of the [b]ank."

*Meadows v. Meadows*, No. 88-135-II, 1988 WL 116382, at *3 (Tenn. Ct. App. Nov. 2, 1988) (citing *Stonecipher*, 298 S.W.2d at 787)).

Here, Philips (the plaintiff, judgment creditor, and garnishor) sought to collect part of its $37,593,949.95 judgment against KPI (the defendant and judgment debtor) from Capstar (the third-party garnishee). If Capstar possessed any property, debts, or effects belonging to KPI that were liable for Philips' debt, the trial court could have entered a judgment and an execution for the same to satisfy a portion of Philips's debt. Tenn. Code Ann. § 26-2-206. In short, if it was determined that Capstar possessed property, debts, or effects belonging to KPI, Capstar was required to surrender them to the trial court. *Tullahoma Indus., LLC v. Navajo Air, LLC*, No. M2019-02036-COA-R3-CV, 2021 WL 2654988, at *3 (Tenn. Ct. App. June 29, 2021), *perm. app. denied* (Tenn. Oct. 14, 2021) (citing Tenn. Code Ann. § 26-2-208 ("As soon as the property is declared to be the property of the [judgment debtor] . . ., it shall be delivered up to the officer serving the garnishment, on demand.")). Given the facts in this case, it is important to recognize that, generally, "'a bank/depositor relationship is treated as a debtor/creditor relationship,'" wherein "[t]he bank 'acquires title to the money deposited, and becomes the depositor's debtor for the amount deposited.'" *Tullahoma Indus., LLC*, 2021 WL 2654988, at *3 (quoting *Rogers v. First Nat'l Bank*, No. M2004-02414-COA-R3-CV, 2006 WL 344759, at *9 (Tenn. Ct. App. Feb. 14, 2006)). Thus, the core issue here is whether Capstar was indebted to KPI for the funds in the Account. Philips, as the judgment creditor, bore the burden of proving such indebtedness. *Tullahoma Indus., LLC*, 2021 WL 2654988, at *3. As discussed, *supra*, the trial court concluded that the funds in the Account did not belong to KPI. Thus, Capstar was not indebted to KPI, and Philips was not authorized to garnish funds from the Account.

On appeal, Philips makes two arguments as to why Capstar should have known that KPI owned the funds in the Account and why Philips was entitled to the funds held by Capstar: (1) Diagnostx purchased assets from KPI and deposited payment for the purchase into the Account, thus the funds in the Account belonged to KPI; and (2) the Joint Written Instruction requiring Capstar to wire funds from the Account to a Bank of America account showed that KPI was the beneficiary on the Bank of America account, thus the funds in the Account belonged to KPI. Although these arguments constitute the main issue in this case, we note that Philips' briefing of this argument is comprised of only three paragraphs and contains no law. We caution that Tennessee Rule of Appellate Procedure 27(a)(7)(A) provides that an appellant's brief *shall contain an argument* setting forth "the contentions of the appellant with respect to the issues presented . . . with citations to the authorities and appropriate references to the record . . . ." Tenn. R. App. P. 27(a)(7)(A). As the Tennessee Supreme Court has stated, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and *where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument*, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) (emphasis added); *see also Forbess v. Forbess*, 370 S.W.3d 347, 355

- 6 -

(Tenn. Ct. App. 2011) ("This [C]ourt has repeatedly held that a party's failure to cite authority for its arguments or to argue the issues in the body of its brief constitute a waiver on appeal."). Despite Philips' failure to properly brief this issue, to bring finality, we address it below. Tenn. R. App. P. 2 ("For good cause, including the interest of expediting decision upon any matter the . . . Court of Appeals. . . may suspend the requirements or provisions of any of these [appellate] rules in a particular case . . . in accordance with its discretion.")

As noted above, Philips' first argument is that

> [t]he Levy served on Capstar Bank identifies KPI Healthcare, Inc. as the judgment debtor (for $37,593,949.95) and lists [the Account]. Capstar Bank had an Escrow Agreement on file associated with this account. The Escrow Agreement shows that the funds in the account belong to KPI. In particular, the Escrow Agreement shows that Diagnostx purchased assets from KPI and deposited money into the Capstar Bank account to be released to KPI upon a joint written notice from Diagnostx and KPI's seller representative, Steven Minn. Thus, upon receiving the Levy on July 1, 2022, Capstar Bank should have known that the account identified by the Levy contained funds belonging to KPI, and Capstar Bank had an obligation at that point not to disperse funds from the subject account to KPI.

(Internal citations omitted). As an initial matter, it is not clear that Diagnostx purchased assets from KPI as Philips alleges. While KPI and its stockholders are listed as "sellers" in the Escrow Agreement there is no "buyer" listed. Furthermore, although the Escrow Agreement states that Diagnostx and KPI were "parties to [a] certain Asset Purchase Agreement," that agreement is not part of our record.

Even assuming, *arguendo*, that Diagnostx purchased assets from KPI, the record does not support Philips' assertion that it was entitled to funds in the Account. First, the Account was established by and in Diagnostx's name. The signature card for the Account is included in the appellate record. "Diagnostx LLC" is listed under both "Title of Account" and "Business Name," and Diagnostx's taxpayer identification number is listed on the signature card. Furthermore, we note that the address listed for Diagnostx on the card is in Florida, although the addresses for KPI that appear in our record are in California. Even the Levy itself seems to acknowledge that the Account is in Diagnostx's name. Under the account number to be levied, it states: "[xxxxxx]4054 (Diagnostx LLC)." Indeed, the record shows that Diagnostx was the customer on the Account rather than KPI. *See* Tenn. Code Ann. § 47-4-104(a)(5) (defining "customer" as the "person having an account with a bank"). As discussed, *supra,* generally, "'a bank/depositor relationship is treated as a debtor/creditor relationship'" wherein "[t]he bank 'acquires title to the money deposited, and becomes the depositor's debtor for the amount deposited.'" ***Tullahoma Indus., LLC***, 2021 WL 2654988, at *3 (quoting ***Rogers***, 2006 WL 344759, at *9). If Capstar was

indebted to any entity, it would have been to Diagnostx rather than to KPI. Importantly, Diagnostx was not listed as a judgment debtor on the Levy. Second, ignoring the fact that Diagnostx was the customer on the Account, because of the nature of the Account, KPI had no power to withdraw the funds held in it. Under the Escrow Agreement, Capstar, as the escrow agent,[4] could disburse funds only if both Diagnostx and Mr. Minn, as KPI's representative, agreed to the disbursement via a joint written instruction. This Court has held that such escrow accounts function as trust accounts. *See **Tullahoma Indus., LLC***, 2021 WL 2654988, at *4. Thus, the funds in the Account—or KPI's interest in such funds—were essentially trust property, not the property of KPI. ***Id.*** For the foregoing reasons, Capstar was not indebted to KPI in the amount of the funds in the Account. ***Id.*** at *3. This Court has explained that "[a] garnishment can only reach debts 'absolutely existing[,]'" *i.e.,* "[t]here must be a debt for which the '[judgment] debtor could sue the garnishee . . . and recover.'" ***Id.*** at *4. Because Capstar was not indebted to KPI for the funds in the Account, KPI could not have sued Capstar to recover same. Accordingly, Philips had no ability to garnish the funds in the Account. ***Id.***

Philips' second argument is:

Even if the Levy and Escrow Agreement did not inform Capstar Bank that the levied account had funds belonging to KPI (and they did), that fact should have been abundantly clear on August 2, 2022, when Capstar Bank received a Joint Written Instruction from Diagnostx and Minn to release the funds in the subject account to "Beneficiary Name and Address on the Account: KPI Healthcare, Inc."

At the hearing, the trial court emphasized the importance of what was stated in the Joint Written Instruction and directed Capstar Bank's counsel to make the Joint Written Instruction available to the court and Philips as soon as possible after the hearing. When the Joint Written Instruction was finally revealed after the hearing, it showed (as Philips suspected) that the instruction was to release [] the funds to the beneficiary on the account, KPI. Upon receipt of this document after the hearing, Philips filed a Supplemental Memorandum to address this point. The trial court, however, issued its ruling without ever addressing the Joint Written Instruction. That was error. The Joint Written Instruction shows that the subject account contained funds belonging to the judgment debtor, KPI, and that Capstar Bank knew of this fact. For this additional reason, this Court should reverse.

(Internal citations omitted). On this Court's review of Philips' initial brief, its argument

---

[4] In part, the Escrow Agreement provided that Capstar would open the Account "into which Diagnostx will deposit funds to be held and disbursed by [Capstar] in accordance with this Escrow Agreement."

concerning the Joint Written Instructions and the wire transfer is unclear. However, we deduce from its reply brief that Philips' argument is that it was improper for Capstar to release funds from the Account to the Bank of America account where KPI was the beneficiary. Specifically, Philips argues that, because KPI was listed as beneficiary on the Bank of America account and in the Joint Written Instructions, Capstar should have known that the funds in the Account belonged to KPI and should not have released them. Philips argues in its reply brief:

> Even if Capstar Bank did not learn that judgment debtor KPI had rights to the money until Capstar Bank received the Joint Written Instructions . . . Philips already had asserted its right to those funds pursuant to the Levy, and it was improper for the bank to release them to KPI. "As soon as the property is declared to be the property of the [judgment debtor], it shall be delivered up to the officer serving the garnishment, on demand. On failure to deliver such property, and a return made on the execution of that fact, judgment shall be entered immediately against the garnishee, for the debt and costs." Tenn. Code Ann. § 26-2-208.

> ***

> Capstar Bank also cites Uniform Commercial Code provisions to argue that a garnishor interested in funds being transferred via wire should seek the funds from the receiving bank rather than the sending bank. That may be true enough where a debtor has no prior relationship with the bank sending the funds to the debtor. In that case, the debtor has no right to the funds until they reach his bank account, and thus the debtor's garnishor has no right to the funds until they reach the debtor's bank account. But here, KPI and its representative, Minn, were parties to the Escrow Agreement with Capstar Bank. Minn gave Capstar Bank the instruction to release the funds to KPI. Under the Escrow Agreement, upon that instruction, KPI had a right to those funds. And because KPI had a right to those funds, Capstar Bank should have delivered the funds to Philips pursuant to the Levy that Philips served 31 days earlier. See Tenn. Code Ann. § 26-2-208.

(Internal citations omitted). Again, Philips provides no law to support its argument. Furthermore, Philips' argument misconstrues crucial facts. For the reasons discussed *supra*, KPI was not entitled to the funds in the Account when they were held by Capstar, and Capstar was never indebted to KPI. Presumably Bank of America would have become indebted to KPI on the transfer of the funds, but at no time was Capstar indebted to KPI. *See id.* at *3 (discussing that the bank/depositor relationship is treated as a debtor/creditor relationship). As discussed above, Philips bore the burden of proving that Capstar was indebted to KPI so that Philips could levy on such debt and collect the funds in the Account. *Id.* For the many reasons discussed in this Opinion, we conclude that Philips failed to carry

- 9 -

its burden.

## V. Conclusion

For the foregoing reasons, we reverse the trial court's conclusion that Capstar was not properly served with the Levy.  The trial court's order is otherwise affirmed, and the case is remanded for such further proceedings as are necessary and consistent with this opinion.  Costs of the appeal are assessed to the Appellant, Philips North America, LLC, for all of which execution may issue if necessary.

       s/ Kenny Armstrong
       KENNY ARMSTRONG, JUDGE